# SUPREME COURT OF TEXAS.

## GALVESTON TERM, 1878.

---

### E. M. SMITH ET AL. V. JULIA CHENAULT, ADM'X.

1. EVIDENCE.—If a party is permitted to read in evidence a part of the adversary party's answer in other cases, such adversary should be allowed to read so much of the remainder of the answers as refers to the same subject-matter as that part read against him.

2. EVIDENCE IN FRAUD.—On a trial involving the title to a tract of land, which had passed from a party who had been discharged in bankruptcy, and the good faith of the transfer is drawn in question, evidence of such bankruptcy proceedings is admissible, as a fact, to be taken with others on that point.

3. ADMISSIBILITY OF DEED PRODUCED BY ADVERSE PARTY.—A deed made by one defendant to another defendant, and being a link in the title claimed by defendants adverse to that of the plaintiff, and which deed had been filed by defendants in the suit, and notice given to plaintiff of such filing, and of the recording of which by part of the defendants there is evidence, may be introduced by plaintiff without further proof, and especially so when there was no effort to discredit it made by the defendants.

4. JUDGMENT, FORM OF.—A judgment rendered without including in the entry the names of the parties plaintiff or defendant, but in the caption giving the firm-names, and in the body of the judgment plaintiffs recover of defendants, no names being given, will support a sale under execution issued reciting the names of all the parties, when the deed made under such sale is collaterally attacked.

5. EQUITABLE RIGHT IN LAND MAY SUSTAIN A HOMESTEAD.—An equitable right to land occupied as a homestead, is protected from forced sale equally as if the legal title was had.

6. PARTNERSHIP USE OF A HOMESTEAD WILL NOT AFFECT IT.—Occupation of a homestead, owned by one of the parties in a firm, for use in the partnership business, it not being inconsistent with use as homestead, will not affect the homestead exemption attached to the property before such use.

7. HOMESTEAD BY TENANT IN COMMON ONLY EXTENDS TO THE QUAN-
TITY OF HIS ESTATE.—One member of a partnership, residing on a
tract of land less than 200 acres, owned in common by the partner-
ship, on the dissolution of the firm cannot assert, from such occu-
pancy, a homestead right to the entire tract, as against creditors of
the firm, or of the other members of the firm.

8. LIMIT OF HOMESTEAD TO LAND OWNED BY CLAIMANT.—One can-
not acquire homestead rights in land he does not own; nor can the
owner of land withdraw it from liability to be sold under execution,
by consenting to its occupancy as homestead by another.

APPEAL from Jefferson. Tried below before the Hon. W. Chambers.

In 1866, A. T. Chenault conveyed a tract of 160 acres of land, on which was an old mill, to E. M. Smith and Hugh F. Young. After the purchase, Smith and Young became partners in the lumber business, and erected on said tract the necessary mills and machinery for said business.

In 1868 or 1869, E. M. Smith moved upon the land, and occupied it thereafter as a homestead.

May 2, 1870, a judgment was rendered in the District Court of Orange county, a copy of which is as follows:

"A. T. CHENAULT & Co.
        *v.*                } No. 239.   May 2, 1870.
   SMITH & YOUNG.

"On this day, came the parties, by their attorneys, and thereupon came a jury of good and lawful men, who, being duly impanelled and sworn, well and truly to try the issue joined between the parties, upon their oaths do say, that they find for the plaintiffs, and assess their damages at the sum of six hundred and eighty-nine dollars and ninety cents ($689.90). It is therefore considered by the court, that said plaintiffs do have and recover of the said defendants the sum of six hundred and eighty-nine dollars and ninety cents, with interest thereon, at the rate of eight per cent. per annum, together with all costs in this behalf expended; for which let execution issue."

Upon this judgment, execution issued 16th of May, 1870.

The execution, after the proper style and direction, proceeds: "Whereas, A. T. Chenault and John O. McGhee, on the 2d of May, A. D. 1870, in the District Court of Orange county, recovered a judgment against Elial M. Smith and Hugh F. Young for the sum of $689.90, debt," &c.

This execution was levied on the undivided interest of Young in said tract of land, mills, machinery, and other improvements, and on October 6, 1870, Chenault, under said levy, &c., became the purchaser.

There were other proceedings affecting the ownership of the Young undivided interest. It was sold under another execution, and bid in by N. A. Young, son of defendant Hugh F. Young, and reconveyed to his father by said N. A. Young; and by deed of trust of Hugh F. Young and wife to J. C. Smith, trustee, and by him to Black, son-in-law of E. M. Smith. Black also put up some machinery upon the land.

November 20, 1870, A. T. Chenault brought suit, in the District Court of Orange county, against Elial M. Smith, his wife, Harriet S. Smith, J. C. Smith, S. R. Smith, and W. H. Black, for the undivided half interest in said tract of land, and for an additional interest in machinery, &c.; the petition asserting that the E. M. Smith interest had been purchased by one Henry M. Deschaumes, and was by him held.

E. M. Smith and Harriet E. Smith claimed the land as their homestead. They attacked the sale of the land under the execution sale made October 6, 1870, in case of A. T. Chenault & Co. v. Smith & Young, as a nullity, and fraudulently made, in selling about $5,000 in value for $100, bid at the sale. The venue was changed to Jefferson county.

The plaintiff recovered judgment for the land sued for. Smith and wife perfected an appeal. The case, so far as necessary to the understanding of it, is further given in the opinion.

Opinion was rendered January 30, 1877.

[No briefs for appellants have reached the reporters.]

*Spencer & Stewart,* for appellees.—A homestead cannot be asserted in co-partnership property. (Elias *v.* Verdugo, 27 Cal., 418; Giblin *v.* Jordan, 6 Cal., 416; Kellersberger *v.* Kopp, 6 Cal., 564; Reynolds *v.* Pixley, 6 Cal., 166; Wolf & Davis *v.* Fleischacker, 5 Cal., 244; West *v.* Ward, 26 Wis., 580; Thurston *v.* Maddocks, 6 Allen, 428.)

The judgment was sufficient to support the execution sale. (Hays *v.* Yarborough, 21 Tex., 488; Luter *v.* Rose, 16 Tex., 53; Alexander *v.* Miller, 18 Tex., 897.)

MOORE, ASSOCIATE JUSTICE.—This suit was brought by A. T. Chenault, appellee's intestate, against Elial M. Smith and his wife, Harriet E. Smith, the appellants Hugh F. Young, J. C. Smith, S. R. Smith, and William H. Black, for the recovery of an undivided half of a tract of 160 acres of land, known as the Empire Mill tract, with the improvements thereon, consisting of houses, mill-houses, a steam saw-mill, two boilers, one engine, one shingle-machine mill and fixtures, levied upon and sold as the property of the defendant Young, under execution on a judgment against the firm of Smith & Young; and also for the undivided half interest of the defendant Elial M. Smith in a shingle-machine mill, the engine attached thereto, &c., said Smith's interest in all of said property, except that last named, as alleged by the plaintiff, having been sold by the sheriff under an individual judgment against him, and purchased by one Deschaumes, previous to the levy and sale on the execution under and by virtue of which the plaintiff claims to have acquired his title.

The defendants, Elial M. Smith and wife, Harriet E. Smith, in their answers, allege that said 160 acres of land was purchased by said Elial M. Smith and the defendant Young, as partners, with the view of erecting thereon mills and machinery for the manufacture and sale of lumber; that said Young desired Smith to superintend the erection and construction of said mills and machinery, and the running and operating of the same after their erection, and in considera-

tion of said Smith doing this, said Young agreed that he should have said 160 acres of land for his homestead; and that shortly after the purchase of said land, he, said Smith, with the consent of Young, moved upon said land, and designated it as his homestead, and from that time hitherto had occupied and resided upon it, with the consent of said Young, as his homestead; that he had fully performed his agreement and undertaking with said Young, to superintend the erecting and running of said mill, &c.; and that said land was, at the time of the levy and sale under which the plaintiff claims to have purchased, the homestead of himself and family.

The original plaintiff dying before judgment, the appellee, Julia Chenault, was allowed by the court to make herself a party, and prosecute the suit as his administratrix.

On the trial, apart from the objections made to the plaintiff's title, and evidence relied upon in its support, the appellants, Smith and wife, rested their entire defense upon their claim, that the property sued for was a part of their homestead; and as none of the other defendants have perfected their appeal, or are here complaining of the judgment, it is therefore only necessary for us to consider such of the rulings of the court assigned as error as call in question appellee's right to the judgment recovered by her against appellants. In doing this, no special reference need be made to the assignments of error; for if this should be done, it is extremely questionable whether it could be held that any of them would be found sufficiently specific and definite to require consideration by the court.

It is not perceived that appellants sustained any injury by reason of the rulings of the court set forth in the bills of exception, though it is admitted that they are not altogether free from error. If the plaintiff was permitted to read to the jury a part of appellants' answer in other cases, certainly they were unquestionably entitled, and should have been allowed, to read so much of the remainder of the answers as referred to the same subject-matter as that part of it read by

the plaintiff; and although the bill of exceptions does not very clearly show that the court refused to allow appellants to do this, if we could see that any injury had been done appellants by the alleged ruling of the court, notwithstanding the deficiency of the bill of exceptions, we might deem it proper to reverse the judgment. But we can see no reason to suppose, from anything in the answers, that appellants suffered any prejudice by the ruling, however erroneous it may have been.

The objection to the evidence showing that Smith had been adjudged a voluntary bankrupt is untenable. It was clearly admissible, in connection with the other facts before the jury, touching the *bona fides* of his transfer to his son-in-law Black of the property claimed by him.

Under the circumstances, the defendants had little ground to object to the introduction by plaintiff of the deed from Newton A. to Hugh F. Young. The deed was made to one of the defendants, and was a link in the chain of title under which others claimed. Notice had been given to the plaintiff that it would be offered in evidence by the defendants. Although they failed to introduce it, they made no effort to throw any discredit upon it when offered in evidence by the plaintiff; and appellant Smith testified that the original deed had been sent to him, as must be inferred, by defendant Young, or his son, the maker of it, and that he himself had caused it to be placed upon record.

The only remaining objection made by appellants to the testimony relied upon by appellee, which need be noticed, is that the execution under which the plaintiff derives her title was not supported by the judgment under which it issued. The judgment in question is believed to be in conformity with general usage and practice in many of our courts in similar cases. The alleged defect is believed at most to be a mere irregularity; and although more attention should be given to such entries, and greater particularity and exactness should be observed in making them than is found in the

present instance, the alleged defect is certainly not of a character to avoid the judgment, or afford ground of complaint in a collateral proceeding.

It remains to inquire whether any injustice was done appellants, in respect to their claim to the property sued for as their homestead, by the charge of the court or the verdict of the jury.

If there was a valid and binding contract between Smith and Young, by which the interest or title of the latter to the land became vested in the former, although the contract between them may have been in parol, if it was so far performed as to entitle Smith to compel its specific performance, we imagine that no objection could be made to his right to appropriate and designate the land to which he was thereby entitled as his homestead. And if he had in fact done so, it could not be subjected to forced sale for the payment of either his or Young's partnership or individual debts. Nor if there was a valid and binding contract or agreement between them, by which the title or right to the land had passed to or vested in Smith, could his right to fix his residence upon it, and appropriate it to the purposes of a homestead, be abrogated or defeated by either a voluntary or absolute and binding agreement, that it might be also used for any partnership purposes, during the continuance of the partnership, not inconsistent with its occupation as a homestead. The charge of the court, we think, fairly presented this view of the law to the jury, and was certainly all that, under the facts of the case, the appellants were entitled to ask.

It is insisted by appellants, however, that by fixing their residence upon the land with the consent of Young, although it was bought and paid for by Smith and Young jointly, and large expenditures had been jointly made upon it, to enable them to conduct and carry on their partnership business, that he was entitled to the entire tract, it being less than 200 acres, by reason of its having been designated and settled upon by him as his homestead. Or at least this was the case when the

partnership was, either voluntarily or otherwise, dissolved. Certainly, we cannot think that such a proposition has any color of law or reason for its support, although it is claimed that the precise point has been heretofore ruled by this court in a case involving this very land. (Smith *v.* Deschaumes, 37 Tex., 429.) But an inspection of this case shows that the court were of the opinion that the evidence showed that Young had sold his interest in the land to Smith. It should also be observed, that the judgment under which the plaintiff claimed was not against the firm, but against Smith individually; and hence the purchaser only acquired his individual interest in the property after the payment of the partnership demands. And it may be that the homestead right of the defendant might in such a case be set up against an individual creditor, for aught that we are now called upon to decide. It is also proper to observe, that the question in this case, is not whether the owner may not appropriate or designate for a homestead, land while held jointly or in common with another, which seems to be decided in the negative by courts of high authority, but as to which we are inclined at present to express no opinion. (See Wolf *v.* Fleischacker, 5 Cal., 244; Reynolds *v.* Pixley, 6 Id., 165; Giblin *v.* Jordan, Id., 417; Kellersberger *v.* Kopp, Id., 565; West *v.* Ward, 26 Wis., 579; Thurston *v.* Maddocks, 6 Allen, 427.)

Certainly, a man cannot acquire a homestead right to land that he does not own; nor will the bare fact of the owner consenting to the occupancy or settlement by another upon his land prevent its being sold for the payment of his debts. If so, any one might put his creditors at defiance, by partnership agreements with those with whom he should carry on business, for them to occupy and reside, with their families, upon his land. Nor will it do to say, that if a party occupies the land as his homestead, no one but the owner can object to the interposition of the homestead claim to prevent its sale. It is an axiom, that a debtor must be just before he is generous; and though he may be willing to give his property to

his friend and former partner, rather than see it sold for the payment of his debts, the law will not permit him to do so. Unless, therefore, appellants' right to the land had become vested before appellee's lien attached to it, the claim that it was their homestead was without foundation. So the jury found; and, from anything seen in the record, we think correctly.

The judgment is affirmed.

AFFIRMED.