[Opinion delivered May 31, 1880.]

---

## H. R. MITCHELL v. J. C. NIX.

(Case No. 3638.)

1. PRE-EMPTION — VACANT LAND — AGREED LINE.— Two settlers on vacant land agreed, before a survey was made, on a dividing line, on the faith of which both improved their respective selections. One of them verbally sold his improvements, the other at the time representing to the purchaser that he did not claim any of the land sold. The one who did not sell agreed with the purchaser that all the vacant land should be surveyed in his name, he to convey to the purchaser all the land included in the survey, situated on the purchaser's side of the agreed line, when patented, the purchaser to pay his share of the expenses; under which agreement the purchaser continued to improve the land occupied by him and offered to pay his part of the expenses. One to whom the land was afterwards patented, and who had notice of the agreements concerning it, cannot recover from the first purchaser the land on which he has his improvements, and which he was to have by the agreements concerning the division line, survey and patent.

2.  PRE-EMPTION — HOMESTEAD — HUSBAND AND WIFE. — As the head of
    the family the husband has the right to select the domicile; but as
    a pre-emptor, he has no vested right in vacant land settled upon
    by him, until he has lived on it the length of time required by law
    to obtain a patent, and he may sell or make agreements concerning
    it without being joined by his wife.    Until he is entitled to a
    patent there is no vested homestead right in land so occupied by
    him, and he may agree to the appropriation of it between himself
    and another.

APPEAL from Cooke.    Tried below before the Hon. A. J.
Carroll.

This was an action of trespass to try title brought by the
appellant for a tract of one hundred and sixty acres of land
patented to him as the assignee of A. G. Harris, granted by
virtue of the pre-emption laws in right of the pre-emption
claim and occupancy thereof by Harris; said Harris being
a married man, entitled to the benefits of the pre-emption
laws.

The defendant claimed a portion of the land by a desig-
nated specific boundary line, amounting to about one hun-
dred and thirty acres of land, embracing his improvements,
in right of the pre-emption claim and rights of one E. S.
Johnson, also a married man, and who had settled upon
the land as a pre-emptioner, and who had sold to this
defendant (appellee) his right, together with his improve-
ments.    The answer alleged that Johnson settled upon
the land as vacant public land, July, 1872; that it was
then, in fact, unappropriated public land subject to ap-
propriation under the pre-emption laws; was then a mar-
ried man and head of a family, entitled to a pre-emption;
thereupon began in good faith to improve the land by erect-
ing cabins, building fences, lots, cribs, and to break and
inclose land, and to make other necessary and permanent
improvements thereon, residing with his family thereon
until about 30th day of June, 1874, when he sold the pre-
emption claim and the improvements thereon to defendant
for the sum of $200, which was paid by defendant to John-
son.    Defendant alleged that, at the time of the settlement
by Johnson, it was the avowed and well known intention of

Johnson to have a hundred and sixty acres of the land, including his improvements thereon, surveyed for him under the pre-emption laws of the state, all of which was well known to Harris, who was also a pre-emption claimant, and who had settled at a point at about the north boundary line of the land which was claimed by the plaintiff under and through the patent of A. G. Harris, which includes the same; and that Harris then represented to Johnson that the pre-emption claim of him (Harris) would not include any part of that intended to be appropriated by Johnson, and thereby induced the latter to make his improvements thereon, and otherwise induced and encouraged him to expend his time, labor and money, of great value, to wit, $200, in permanently bettering the land sued for, all the while representing to Johnson and to others that it was not a part of the land intended to be appropriated by him (Harris), who was then improving land entirely north of and adjacent to the land sued for, and which was then believed by Harris, Johnson, and by others in the neighborhood, to be vacant public land, but a part of which afterwards proved to be already appropriated, including nearly all of the improvements of Harris.

It is further alleged in defendant's answer, that, at the time of the settlement of Johnson on the land in question, Harris claimed,— and it was then and there agreed between him and Johnson,— and from that time it was the understanding and agreement between Harris and Johnson, and between Harris and the defendant, that the south boundary line of Harris' pre-emption should be defined as follows, viz.: " That a stream called Mountain creek, which enters the survey sued for by the plaintiff from the west, at a point near midway between its southwest and northwest corners, and runs westerly to near the center of said survey, as now made, whence it curves and runs in a more northern direction, and the said stream running through the same, as the dividing line between the said E. S. Johnson and the said A. G. Harris, from the west boundary of the same, thence east with the said stream to a cottonwood in the bend of

said creek, and that from said bend thence eastwardly to the east boundary line of said land at or near a forked black jack on the hill." That it was agreed between said parties that the dividing line between them should be continued down Mountain creek from the western boundary to the cottonwood at said bend, thence due east to the east boundary line, at or near said black jack, as it was then supposed it would reach the same.

Defendant alleged that, up to the time when he had bought and removed upon the pre-emption claim of Johnson, both parties acted upon the above agreement concerning the boundary line of their respective pre-emption claims, and regarded it in good faith; and that Johnson continued to improve his part of the land, and that the defendant purchased from him with a full knowledge of all the facts and with the consent of Harris that defendant should be substituted to all the rights of Johnson under the agreement; that defendant, acting upon the understanding thus had between the parties, the division line being pointed out to him by both parties, paid Johnson $200 for his improvements, and he continued to put other and valuable permanent improvements on the land in good faith of the value of $500, and has continued to reside on, cultivate and improve the same from the time of his purchase until the institution of the suit.

Defendant further alleged that after the boundary line had been agreed upon, it was discovered by the parties that a large portion of the land supposed to be vacant and to be included within Harris' pre-emption was appropriated by other surveys, whereupon it was agreed between Johnson and Harris that, for convenience and economy, they would have both their pre-emptions included within the same survey to be made by and in the name of either of them as convenience suited, and that after the same was patented they would divide the same on the same line agreed upon, and the expenses of surveying and patenting according to equity. That at divers times after defendant removed upon said pre-emption, and before the survey and patenting, Harris

and defendant made the same agreement. That relying upon the good faith of Harris, defendant consented to a surrender of all pre-emption claim acquired either by himself or Johnson on that portion of the land lying north of the line agreed upon by Harris and Johnson, and he took no steps to secure the same to himself. ·

That in pursuance of such understanding, Harris surveyed in the land and improvements of the defendant, agreeing to convey the same, with the land claimed by defendant, to him whenever the defendant should demand a deed therefor, and tender Harris one-half of his reasonable expenses in surveying and patenting. That after Harris had procured the survey of the land and the patent thereon, in fraud of the rights of the defendant, he attempted to convey away the whole of the land to plaintiff, including the house and improvements thereon made and bought by defendant. The answer charged that the plaintiff took or acquired the land with full knowledge of all the facts, and that defendant with his family resided thereon, and was claiming the same as a pre-emption under the agreement as to the boundary before stated. The answer disclaimed all claim or right to any part of the pre-emption survey lying north of the boundary line, prayed to be quieted in his possession of the land claimed by him, and for general relief. By an amended answer defendant alleged all the material facts essential to entitle Johnson to the rights of a pre-emptioner at the time of defendant's purchase, and that, relying upon the contract between Johnson and Harris in regard to the surveying and patenting, he, defendant, took no steps to perfect his title by filing upon the land and having it surveyed until about the 8th day of February, 1876, when, learning that Harris was seeking and intending to violate his contract by appropriating all of the land to himself, and refusing to convey to him, in accordance with the contract, his, defendant's, part of the land, he made his file upon the land and requested the surveyor of Cooke county to survey the same for him as a pre-emptioner, and tendered him all necessary fees, who refused to survey it because it was covered by the survey of

Harris. That so relying upon the good faith of Harris, defendant not only permitted him to have the land surveyed in his own name, but he expended labor and money upon his part of the land after it was surveyed, by erecting valuable and permanent improvements thereon, which was done with the knowledge of and without objection from Harris, he knowing, too, at the time, that the defendant was claiming the land and was expecting him to convey his portion of the land to him, as soon as a patent was procured. The amendment alleged that a patent had issued to the plaintiff as assignee of Harris, but that neither Harris nor the plaintiff had made or offered to make a conveyance to him. In a separate answer the defendant suggested improvements, good faith, etc., with prayer to be allowed their value. Defendant alleged a tender of his part of the expenses of surveying, patenting, etc., and tendered the money into court.

*W. A. Davis*, for appellant.

*C. C. & C. L. Potter*, for appellee.

WALKER, P. J.— This cause was submitted to a jury, under a charge of the court, which in effect maintained, as a legal proposition, that the facts set up by the defendant's answer constituted a valid defense to the plaintiff's action. The evidence relating to the main facts of the defense was conflicting; the verdict of the jury was rendered for the defendant, and there was ample testimony to support it; indeed, the preponderance of the evidence may be fairly said to be in favor of the verdict. It was the peculiar province of the jury to weigh the evidence and to judge of the credibility of the statements of all the witnesses. The court refused to grant a new trial, and, therefore, so far as concerns the facts, we will not consider them otherwise than as being determined by the verdict of the jury; and the only questions left properly for our consideration are involved in the inquiry whether there was or was not error in the charge given by the court, or in the refusal of the judge to give instructions asked for by the plaintiff.

The appellant's first assignment of errors is as follows, viz.: "The land in question being the homestead of A. G. Harris, the court erred in holding, in the charges given and refused, that said Harris could, without the consent of his wife, confer a right or title to any portion of said land upon defendant J. C. Nix." Although this assignment is succeeded by six others specifically referring to the above charge of the court given, pointing out the objectionable portion thereof, and doing likewise in respect to the particular instructions which were refused, it is believed that a due consideration of the merits of this, the first assignment, and the legal proposition involved in it applicable to the facts of the case, will properly dispose of this appeal, and sufficiently embrace all that need be said in respect to the other assignments of error.

The charge of the court maintained the validity of agreements made between A. G. Harris and E. S. Johnson, and between said Harris and the defendant, as set forth in the pleadings and shown in the evidence, and as being binding upon said Harris, and that if such agreements were made, such boundary lines established, under such understanding as alleged with respect to the patenting of the land to inure to the mutual benefit of the respective pre-emptors as claimed by the defendant, and if the said agreements had been acted upon as alleged, that such contracts would be enforced beneficially to the defendant, and that the plaintiff could not recover. The charge further, in effect, maintained that if the agreement between Harris and Johnson was conditional in respect to the boundary or division line, and was only to have been observed and carried out (as the plaintiff insisted) on the condition that Harris could obtain a sufficiency of vacant land to give him one hundred and sixty acres north of said line, and, failing therein, that he should have the privilege of going south of said line to make up his complement, and that after Johnson had removed off from said land that the said Harris had his survey made including the land in controversy, and that Harris had lived upon said land for three years prior to the date of the agreement

between Harris and the defendant Nix, in respect to the contract of patenting for their mutual benefit, that in such case the homestead right would have vested in Harris and wife, and that her conveyance and acknowledgment thereof would be necessary to divest the plaintiff, and the defendant could not recover.   Under the facts evidently Harris had not lived upon the land for the period of three years prior to the date of the supposed agreement between Harris and Nix above referred to, and this view of the law applicable to the plaintiff's case could not enable him to recover.   The instructions asked by the plaintiffs, and which were refused, presented the counter view of that proposition, to this effect, viz.: "If you should believe from the evidence that the agreement between Harris and Johnson was conditional, and that the land claimed by Nix was only to be the line between Harris and Johnson in the event that Harris could obtain one hundred and sixty acres north of the said line, and that after Johnson moved off the premises, and before Nix moved on the land, Harris had his survey made, then the one hundred and sixty acres mentioned in the field notes belong to Harris, and any contract afterwards made between Harris and Nix, unless in writing, signed by Mrs. Harris, would be a nullity, and would confer no right upon Nix. . . . If Harris was a married man and had a right to one hundred and sixty acres prior to Johnson, then Harris could not by his own agreement deprive himself of any part of the one hundred and sixty acres of land he was entitled to under the law; said land would be the homestead of Harris, and he could not, while living on it, dispose of any part of the land without a deed in writing in which his wife joined."

The other instructions asked by the plaintiff presented the same question in other language and phases, but they need not be stated with further elaboration.

The eighth and last assignment of errors is, that the verdict of the jury is contrary to the law and the evidence; the proof showing that the land was the homestead of A. G. Harris, and that he was not joined by his wife in any contract made by him with defendant Nix or Johnson.

The legal questions upon which the case is made to depend, according to the presentation of it under the assignments of error, involve two propositions, viz.:

1st. Where two married men, each entitled to a preemption of one hundred and sixty acres, settle upon vacant public land with the intention of perfecting their rights thereto; establish a boundary line between their respective settlements before a survey has been made, and in ignorance of whether there is a sufficiency of vacant land to satisfy both claims, on the faith of which both parties cultivate and improve their respective selections; and where one of said parties verbally sells his improvements and claim to a third person, and the other pre-emptioner, at the time of the sale, representing that he did not claim any of the land embraced within the boundary line claimed by the said vendor; and where the purchaser was induced to make the purchase by reason of such representations; and that afterwards the other pre-emptioner, who had not sold, procured all of the land to be surveyed in his own name as his pre-emption claim, under an agreement with said purchaser that he would convey to him, the said purchaser, all the portion of the land thus purchased by him situated within the line which had been agreed upon between the aforesaid two pre-emptioners, whenever he should procure title upon the same; said purchaser to pay the expenses of procuring the title; said proposition being accepted, and the purchaser induced thereupon to make permanent and valuable improvements on said land thus stipulated to be conveyed; and that after the title was obtained, said purchaser tendered the amount of said expenses according to the terms of the offer,— on that state of facts, can the original grantee of the whole tract, or his assignee, acquiring the patent as assignee, with full knowledge at the time of the transfer to him of all these facts, recover from said purchaser of the said improvements and claim that portion of the patented land which was thus agreed to be conveyed to him when the patent should be issued? The court charged the jury that the plaintiff, under such state of case, could not recover; which proposition is embraced in the

fourth paragraph of the charge of the court, and the appellant assigns the giving thereof as error.

The remaining question is whether, at the time of making said agreement thus to convey to the said purchaser, the wife of said pre-emption grantee had such a homestead right in the land as to render the agreement invalid without her consent, properly expressed in writing, under the forms of law requisite to divest her thereof.

Harris and Johnson went on the land together, with like intentions of appropriating one hundred and sixty acres of land for the benefit of each of them as homesteads; without definite information as to the extent of public land in that locality to satisfy the expectations of both, they were satisfied to mutually act upon the assumption that this was at their several respective risks by a satisfactory conventional boundary line, which both bound themselves to respect in making their surveys, and it was not known to the disadvantage of which one of them, if either, such disposition of the land, as between themselves, would result in.  Upon the faith of it, in good faith, both expended time, labor and material in building houses, fences and other improvements, and in the cultivation of the soil, thereby entitling themselves, in the letter and spirit, to the bounty of the government. After a time Johnson leaves his improvement for a few months, and again returns to it, and continues his course of life there as a settler as before.  In the mean time no intimation is given of any probable deficiency of vacant land to enable the parties to secure their respective settlements of one hundred and sixty acres each, nor does either party procure or seek to obtain a survey of either allotment, nor any other steps taken by designations of filing, making declarations of intention with the surveyor or other action contemplated to be taken in order to secure any specific lines or boundaries of the land in question.  Harris and Johnson remain thus living close neighbors, evidently contentedly relying each on the good faith of the other in respect to the observance of the agreement that Harris' land, when it should be run out or surveyed, should lie north of the agreed line,

whilst Johnson's should lie south of it, let the result as to the advantage to the one or the other turn out as it might. In this condition of things, Johnson sells his improvement and claim to defendant J. C. Nix, who purchases with full knowledge of all the facts, and with affirmance by Harris, made to him at the time of the sale, of the agreement respecting the boundary line between the actual improvements, and which was destined to be the line dividing the prospective titles, at that time in process of formation. The sale, although a verbal one, was valid. Bledsoe v. Cains, 10 Tex., 455; Fowler v. Allred, 24 Tex., 186. Nix succeeded to the rights of Johnson. If, however, he failed to become an actual occupant of the land, it would be subject to pre-emption by another; and, doubtless, if Nix abandoned the land, or failed to remain upon it as an actual occupant, thereby rendering it vacant and unappropriated, Harris would not, in such case, hold the same in trust for him by virtue of said agreement in respect to the boundary, and Harris being thus discharged from the obligation which he had been under to observe towards Johnson, his possession would operate to give him exclusive pre-emption rights to the entire tract, and the assignee of Johnson could not again enter as a pre-emptionist, except in subordination to the superior right of Harris. Cravens v. Brooke, 17 Tex., 274; Jennings v. Cordova, 20 Tex., 513. Yet, in the application of this rule to the evidence, it might nevertheless be a disputable fact, whether, in contemplation of law, the defendant Nix did not immediately succeed to the possession of Johnson as an occupant of the land, in February, 1874, when he purchased, and that his subsequent absence from the land until the fall of 1874 did not constitute an abandonment, nor be construed against him as amounting to non-occupancy of the land.

A temporary absence on business, or on a visit to friends and relatives, will not constitute an abandonment of a preemption claim. Bledsoe v. Cains, 10 Tex., 459. The appellee testified that he did move some of his things to the improvement at once after the purchase, and intended to move on the land when he bought it, but on account of sick-

ness did not get his family moved on the place until the latter part of the year 1874. A continuous and uninterrupted possession by the defendant, thus preserving the integrity of the claim and right of his vendor, would doubtless support a claim to an equitable partition of the land whenever it should be patented, based upon the agreement thus made by joint pre-emptioners, who had thus agreed to appropriate tracts of land contiguous to each other, and which were to be distinguished by a dividing line agreed upon between them, even though the patentee had attempted, by procuring a patent to the whole, to disregard the rights of his neighbor. It is not clear that, even under the strictest view which may be taken of the defendant's rights under the terms of the pre-emption law, he may not be entitled to the protection which the verdict of the jury has sought to afford to him. Upon the application of the law governing pre-emption rights, it may be very questionable whether the defendant can claim any part of the land as against the plaintiff in right of his pre-emption claim and purchase from Johnson. However that may be, the merits of the defendant's case are presented under the facts, upon principles of equity, justice and right, far broader and more comprehensive than those which may be considered within the narrow range of the statutes regulating the subject of pre-emptions. They are involved in the principles applicable to contracts to convey lands generally, and by the rules of law which exact good faith, fair dealing, and require that a man shall so use his own as not to injure another's, and by maxims whose operation estops him from inducing a confidence whereby another expends his means and labor, only to betray it.

The defendant shows the purchase of the improvements and pre-emption claim of Johnson, with full knowledge on the part of Harris that he did so for a valuable consideration, and upon a well-founded belief, induced by the affirmation of Harris himself, that no conflict could arise respecting the boundaries of the two pre-emptions, and that he had no claim and would interpose none incompatible with the boundaries of Johnson's pre-emption. After making said

purchase, Harris made a contract with him, founded on a sufficient consideration moving to each party, whenever a title should be obtained from the government by patent to either of the contracting parties, that a conveyance should be made by the patentee to the other of the land to which he should be entitled according to the aforesaid agreed boundary line. Such a contract for the conveyance of land, if it were in writing, in the form, for instance, of a bond for title, would be certainly enforceable as a legal, valid contract. It would afford a safe reliance for a title, and when the obligee became entitled under it to a deed, such a bond would serve him as a good equitable, in default of obtaining the clear legal, title by deed. The case is not altered in result because the contract was by parol, when considered in connection with all the other facts, notwithstanding that such parol contract is within the statute of frauds. "Courts of equity will enforce a specific performance of a contract within the statute where the parol agreement has been partly carried into execution. The distinct ground upon which courts of equity interfere in cases of this sort is, that otherwise one party would be enabled to practice a fraud upon the other; and it could never be the intention of the statute to enable any party to commit such a fraud with impunity. Indeed, fraud in all cases constitutes an answer to the most solemn acts and conveyances; and the objects of the statute are promoted instead of being obstructed by such a jurisdiction for discovery and relief. And where one party has executed his part of the agreement in the confidence that the other party would do the same, it is obvious that, if the latter should refuse, it would be a fraud upon the former to suffer this refusal to work to his prejudice." 2 Story's Eq. Jur., sec. 759. Especially will it be held to take a case out of the statute under a parol contract to convey lands, where the party let into possession under it has expended money in building, or repairs, or other improvements; for under such circumstances, if the parol contract were to be deemed a nullity, he would be liable to be treated as a trespasser; and the expenditures would not only

operate to his prejudice, but be the direct result of a fraud practiced upon him. 2 Story's Eq. Jur., sec. 763, and authorities cited. Chancellor Kent says: "Such a resort to equity is addressed to the sound judicial discretion of the court. . . . The court will always have an eye to the substantial justice of the case. . . The ground of this interference of chancery is fraud, in resisting the completion of an agreement partly performed, and which part performance would work a fraud upon the party unless the agreement was carried into complete execution. What facts will amount to a part performance sufficient to justify the interference of chancery depends upon circumstances. Generally, it may be observed, that delivery of possession is part performance. So the making of beneficial improvements on the land may be taken for part performance." 4 Kent's Comm., 451. See, also, Dugan v. Colville, 8 Tex., 126; Ottenhouse v. Burleson, 11 Tex., 87; Johnson v. Bowden, 37 Tex., 624.

It would not be easy to imagine a case more fitting for the application of the foregoing principles of equity, supported as they are by sentiments of such exalted justice, than this now before us.

If the plaintiff may successfully resist the claim of the defendant for a specific performance of his agreement to convey, he will have succeeded not merely in diverting the state's bounty from one equally entitled to it upon precisely the same services and considerations rendered, and securing it wholly to himself, but he will also have increased the value of his unjust gains, by obtaining, by fraudulent practices and covert concealment of his designs, the toil and labor and capital of his confiding neighbor, who had trusted to his honor. No such transaction can stand in a court of equity.

The next, and only remaining question, has respect to the homestead right of the wife, as has been stated.

No right in the land, other than an inchoate interest, subject to be perfected by three years' occupancy and otherwise complying with the law, is acquired by a pre-emptioner, until such period of time shall have elapsed as entitles him

thereto.  A pre-emptor has no vested right to, or fixed and definite interest in, land which he has settled on, until he shall have occupied the same for three years; and a sale by him at any time before he shall have thus become entitled, or shall have acquired such vested right, will not carry with it a vendor's lien to secure the price or purchase money. Palmer *v.* Chandler, 47 Tex., 332.  At the time, then, that Harris contracted to convey to the defendant Nix the title to the land, he had no other than an inchoate or rudimentary title, but no vested right to, or definite interest in, the land; a sale or conveyance made by deed from himself, joined by his wife, would have vested in the purchaser no greater right than they possessed, viz., a right to occupy the land and complete the title by compliance with the pre-emption laws.  There was no alienable nor vendible homestead right in the land, which could be reached by execution; the soil belonged to the state, and a purchaser of it at sheriff's sale, made under execution, against Harris, would not have conveyed any title, legal or equitable, which could have been made available to the purchaser, unless by his occupancy of the land as a settler, complying with the law of pre-emption.  As against creditors the homestead is exempt from execution, irrespective of the character of the title as to its relative strength or weakness; so far as creditors are concerned they have no interest in the subject-matter; it does not concern them whether the homestead of a debtor is held by a perfect or an imperfect title; it is sufficient for them to know that the homestead quality that attaches to the debtor's domicile exempts it from execution.  But there are other classes of persons who may possess not merely equal interests with the occupants of the land claimed as a homestead, but their rights to or in it may be superior and paramount; as, for instance, the vendor of the land, or one having a superior legal or equitable title to that held by the homestead occupants, or one who may possess any other equity in the land superior to that of the possessors of the homestead premises.  "Certainly," said Chief Justice Moore, in Smith *v.* Chenault, 48 Tex., 462, "a man cannot acquire a homestead

right to land that he does not own; nor will the bare fact of the owner consenting to the occupancy or settlement by another upon his land prevent its being sold for the payment of his debts."

Harris and his wife, therefore, had not acquired a homestead right against the owner of the land, which was the state of Texas, at the time of the contract and agreement made between Harris and the defendant; three years' occupancy by Harris and wife had not transpired at that time. The homestead right to and in the land was then in expectancy, the title thereto merely *in fieri*. It was competent for Harris, as the head of the family, to direct the selection and locus of his habitation and domicile; "the husband chooses and establishes the homestead" (Holliman *v.* Smith, 39 Tex., 357); and as the head of the family he can contract with reference to the acquisition of lands, and agree to the appropriation of public land between himself and another, as was done by him with the defendant; and there being no vested nor acquired homestead right then existing, the defendant would not be prejudiced by the ultimate and intended destination of Harris' interest to homestead purposes; the equities of the defendant would be protected. "No subsequent destination or occupation of premises which have been incumbered by the husband prior to such destination can give to the mortgagor or his family such a homestead in the specific property incumbered as would defeat such incumbrance." Mabry *v.* Harrison, 44 Tex., 287.

The wife of Harris acquired no special homestead rights to the land because of the claim being made under the preemption laws, which are designed mainly to secure to families homes and homesteads; for, as a general rule, the wife will not be permitted to make the oath required by the preemption laws to perfect and secure a pre-emption claim. Allen *v.* Harper, 19 Tex., 501. The nature of the claim to the land does not essentially vary the ordinary principles of law applicable to the acquisition of homestead rights in lands generally.

"The wife's interest in the community property is held in

privity with the husband. The power of the husband over the community estate by estoppel is not less than that of a partner to estop his firm." Ranney *v.* Miller, 51 Tex., 264. "It has long been the settled doctrine of this court that a homestead is not acquired against parties holding prior equities and incumbrances, until the title to the land on which the homestead is sought to be established has been perfected by the payment of the purchase money, and that all liens accruing before the homestead has been established must be raised, or it will be subject to forced sale. As against homestead rights, in the absence of fraud, the husband has the right to renounce lands incumbered to the holders of such liens." Clements *v.* Lacey, 51 Tex., 151.

Chief Justice Hemphill, in White *v.* Shepperd, 16 Tex., 172, said, in regard to the restraint of the husband to dispose of the homestead without the wife's consent, "this restriction applies where the husband has acquired full property in the land, and not where it is charged with preceding equities or incumbrances. These must be discharged, and they have precedence over the rights of the homestead privilege; and the right of the husband to make arrangements in relation to these incumbrances, or to renounce lands thus burdened or subject to conditions and contingencies, could not be questioned by the wife, in virtue of her remote right which might arise if the incumbrances or conditions were ever discharged or removed, unless in cases where the husband is squandering the property, with the fraudulent design of depriving the wife of a homestead." See, also, Meyer *v.* Claus, 15 Tex., 516; Farmer *v.* Simpson, 6 Tex., 303; George *v.* Thomas, 16 Tex., 89. The ready application of these principles to the facts of this case are too apparent to require argument or illustration. The wife of Harris had no such homestead rights in the land as to render her consent in writing, or her consent in any other form, essential to the validity of the contract between her husband and the defendant. It was a valid contract, and the performance of it by the defendant gave him equities that will be protected as against Harris and his assignee with notice of them.

The plaintiff, when he comes into a court seeking right, himself must do it; if he seeks equity, he must do equity. He now claims the whole tract of land, including the improvements which were placed there in the confidence of the observance of good faith in the. agreements made from the period of the primary settlement by Johnson down to the date of Harris' effort to disclaim his contract, inducing Johnson to improve the land under an express agreement as to boundaries; encouraging the defendant to do the same by ratifying his former agreement with Johnson, and standing by, witnessing and encouraging the defendant's expenditure of labor, time and money, under a contract to convey to him the land whenever he should obtain a patent. He is entitled to no relief.

There was no error in the judgment which was rendered, and it will be affirmed.

                                            Affirmed.