### J. E. BLACKWELL v. FARMERS AND MERCHANTS NATIONAL BANK OF CLEBURNE.

#### No. 1301. Decided March 24, 1904.

**1.—Appeal—Assignment of Errors.**
An appellee can not assign errors against his coappellee. (P. 450.)

**2.—Partnership—Sale—Lien—Waiver.**
The lien of partners on partnership property for the payment of partnership debts is generally waived by one who takes from the other, on dissolution and division of the property, an agreement to assume and pay the debts; and its retention in such case is to be distinguished from a conventional lien by agreement that one partner shall pay certain debts out of the partnership property received by him. (Pp. 451, 452.)

**3.—Lien—Agreement.**
A mere discussion between partners on dissolution as to how one might be able to pay certain partnership debts assumed by him out of the partnership assets which he retained did not amount to an agreement that the other should have a lien on such assets for securing the payment of the debt so assumed. (Pp. 451, 452.)

**4.—Appeal—Damages for Delay.**
A defendant who was forced to appeal to secure his rights against a co-defendant, held not liable to the plaintiff for damages for delay in such appeal, though neither defendant disputed plaintiff's right to recover. (Pp. 452, 453.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Johnson County.

The bank sued Blackwell and Durham on notes and the latter alleged suretyship as against Blackwell. Plaintiff had judgment against both and Durham judgment against Blackwell, who appealed and on affirmance obtained writ of error.

*Ramsey & Odell* and *Brown & Bledsoe,* for plaintiff in error.— it appearing from the evidence that the contract between B. L. Durham and J. E. Blackwell as to the payment of the notes sued on and the three other notes referred to in the pleadings of the defendant Durham, if such contract was made, was merely a contract by the defendant Blackwell to indemnify the defendant Durham against liability on said notes, and it further appearing from the evidence that said notes were all held and owned by the Farmers and Merchants National Bank, and that three of said notes were not due, and that the said B. L. Durham had never paid said notes, the said B. L. Durham was not entitled to a judgment against the defendant Blackwell in his favor for the amount of said notes, and hence the court erred in giving and in not refusing to give the said special charge number 3 asked by the defendant Durham. Crippen v. Thompson, 6 Barb., 534; Gilbert v. Wiman, 1 N. Y. (Comst.), 550; Churchill v. Hunt, 3 Denio, 321; Port v. Jackson, 17 Johns, 239; Aberdeen v. Blackmar, 6 Hill, 324; Thomas v. Allen, 1 Hill, 145; Little v. Little, 13 Pick., 426; Cushing v. Gore, 15 Mass., 69.

There was absolutely no evidence justifying a charge authorizing the jury to find any lien in favor of the defendant Durham upon the property referred to in said paragraph of said charge. The only evidence to any agreement or contract for a lien in favor of the defendant Durham upon the property referred to in said charge was the testimony of the defendant Durham. That such a parol agreement as testified to by said Durham was not sufficient to create a lien in his favor upon said property referred to in said charge seems to us apparent. Scott Grocer Co. v. Carter, 34 S. W. Rep., 375; Stansell v. Fleming, 81 Texas, 298; White v. Parish, 20 Texas, 688; Gay v. Hardeman, 31 Texas, 245; Hastings v. Kellogg, 36 S. W. Rep., 825; 2 Notes on Texas Reports, 278.

The evidence showing that the defendants Blackwell and Durham had made a contract of dissolution and had converted their partnership property into separate property, and that the only contract, if any, as to the lien being retained upon any of the property in the possession of one of said partners was by parol, under said facts and under the law, no lien could exist in favor of B. L. Durham upon the property referred to in said charge.

The Court of Civil Appeals erred in assessing 10 per cent damages against appellant Blackwell on the suggestion of delay by the plaintiff in this case (1) because under the law of this State, the defendant Blackwell, having pleaded against the plaintiff that he was simply a surety on the note sued on, had a right to have this issue tried, both as to the plaintiff bank and as to his codefendant Durham, before plaintiff was

entitled to enforce its judgment against him; and it could not and ought not to be said that an appeal from a judgment finding defendant Blackwell liable as principal on the indebtedness sued on, under the facts of this case, would be held delay. Texas Civil Trial, Appellate Procedure, 381, 382; Rev. Stats., art. 3819.

*S. C. Padelford* and *D. W. Odell,* for defendant in error Durham.—Our statute (article 3326) expressly provides as follows: "Nothing in this title shall be construed or considered as in any manner impairing or affecting the right of parties to create liens by special contract or by agreement, nor shall it in any manner affect or impair other liens arising at common law or in equity, or by any statute of this State, or any other lien not treated of under this title." That is, all liens which are good and valid at common law or in equity can not be and are not in any way affected or modified by any statute governing written or other liens.

Where a copartnership exists each partner has a lien or charge on all of the partnership effects for the purpose of securing payment of all partnership debts, and for all debts due to each partner by the firm for advances or otherwise. This proposition is so well established that it does not require citation of authorities in its support.

It is also a proposition of law that if one of the partners sells out his interest in the copartnership to his copartner, the law holds that he has waived or abandoned this lien unless in the contract of dissolution or sale he reserves or preserves this lien by having it agreed with the purchasing partner that the copartnership property shall be subject to the debts and shall be utilized in paying off copartnership debts; and if this reservation is made or if it is understood between the parties that this lien shall be preserved, then the authorities are as uniform in holding that the lien is not waived and abandoned but reserved and preserved. Willis v. Heath, 18 S. W. Rep., 802, 803; Willis Bros. v. Thompson, 85 Texas, 311; Stansell v. Fleming, 81 Texas, 298; Rogers v. Nichols, 20 Texas, 724.

It is further a law, that, if the purchasing partner agrees to pay the debts with or out of the assets or to apply the assets to the debts, a trust fund is created, or rather the retiring partner has preserved his equity to insist upon an application of the assets to the debts and has, in effect, a lien on the assets to secure debts which the courts will enforce. 1 Bates on Partnership, 572, sec. 552. See, also, Texas authorities cited above; Topliff v. Vail, 1 Harr. Ch. (Mich.), 340; Deveau v. Fowler, 2 Paige Ch., 400; Wildes v. Chapman, 4 Edwards' Ch., 670; Harmon v. Clark, 13 Gray, 120-122; Conroy v. Woods, 13 Cal., 626.

The facts in this case show that in the dissolution Durham received a stock of goods worth $3000 and Blackwell a stock of goods worth $6000, and Blackwell agreed to sell off and reduce the $6000 worth of stock and appropriate a sufficient amount of the stock to pay off the indebtedness involved in this case, which was a copartnership indebted-

ness. Blackwell received the Laclede stock of goods burdened with the trust of holding the same for the purpose of selling off a sufficient amount of said stock to pay off this copartnership indebtedness, which at said time was a charge or lien in favor of Durham on said stock. The facts in this case show that Durham did not waive or abandon the partnership lien which he had on the Laclede stock of goods, but in the contract of dissolution he expressly reserved this charge or lien for the purpose of paying off this copartnership indebtedness. This, the lien he originally had before the dissolution, was not waived and abandoned, but was preserved and reserved and continued and fastened onto, over and against this Laclede stock, which was placed in the hands of Blackwell burdened with a trust or obligation, to sell and appropriate a sufficient amount of said stock to pay off this copartnership indebtedness, which would then make him equal in the partition with his former copartner, Durham.

Even though Durham and Blackwell were not partners in this contract of partition, by the agreement between them that the Laclede stock should be held by Blackwell and a sufficient amount sold to pay off the indebtedness involved in this case in equity, a lien or charge was created on the Laclede stock in the hands of Blackwell, and he to that extent held the Laclede stock in trust to appropriate a sufficient amount of it to pay off this debt. This, in equity, created a lien on the Laclede stock, and the charge of the court and the verdict of the jury are fully supported by the facts and by the above principles of equity. We cite, as bearing upon this issue, the further authorities: Red River County Bank v. Higgins, 72 Texas, 66; Henderson v. Ries, 102 Fed. Rep., 713, 714; Jones v. Parsons, 25 Cal., 106; Coats v. Donnell, 94 N. Y., 168; Ketchum v. Durkee, 1 Hoffman Ch., 538; Hodges v. Holman, 31 Ky., 50; Roberts v. McCarty, 9 Ind., 16, 68 Am. Dec., 604; Sumner v. Hampson, 8 Ohio, 328, 32 Am. Dec., 722; Jackson v. Rutherford, 73 Ala., 155; Woods v. Dickinson, 7 Mackey, 301; Bradley v. Root, 5 Paige, 632.

*J. M. Moore,* for Farmers and Merchants National Bank, defendant in error.—The relation of principal and surety is the creature of contract, and such relation must enter into and become a part of the contract at the time it is made; and no subsequent arrangement between the makers of an obligation whereby they attempt to create such relation, is binding on the obligee or payee unless he is a party to such change or assents to same. Stroop v. McKenzie, 38 Texas, 134; Stearn on Suretyship, secs. 2, 5; Brandt on Suretyship and Guaranty, sec. 3, p. 5, also sec. 29.

It appearing affirmatively by all the evidence that the notes sued on were executed by both makers as principals, and, at most, in their dissolution, contracted two months later, one or the other agreed to assume and pay such notes, to which arrangement the bank was in nowise a party, such suretyship is not shown as would entitle either maker, as

against appellee bank, to invoke the provisions of article 3663, Revised Civil Statutes. Same authorities.

The judgment of the trial court and Court of Civil Appeals, as to defendant in error bank, should be reformed in accordance with said bank's cross-assignment of error and affirmed, because there was no such suretyship shown as against defendant bank, in favor of defendant Durham against plaintiff in error, in the execution of the notes to defendant bank as to entitle him to require the bank to proceed first against the property of plaintiff in error; because the undisputed evidence shows that the plaintiff in error and his codefendant below, Durham, borrowed the money from the bank for which the notes sued on were given as principals and executed said notes as principals, not only as to the bank, but as between themselves, and there was and is no claim of suretyship in said transaction until the dissolution had between plaintiff in error and Durham, six weeks after said notes were given, and this suretyship, if such it can be called, grew out of the dissolution, agreement, or contract between the makers of such notes, and defendant bank was in nowise a party to such agreement. It is submitted that defendant bank can not have its relations to and rights growing out of the contract evidenced by the notes sued on altered or abridged by the acts or agreements of the makers of the notes subsequent to executing said notes in which acts or agreements the payee did not concur. Shapleigh Hardware Co. v. Wells, 90 Texas, 112.

If this court shall hold that it has revisory power over the action of the Court of Civil Appeals in assessing 10 per cent damages against plaintiff in error Blackwell for vexatious appeal (and it is submitted that it has no such power under article 1028, Revised Statutes) and should be inclined to inquire into the justice of same, then defendant bank submits that such damages were properly assessed, because it is plain that the only purpose of the appeal was to delay the bank in the collection of its debt until plaintiff in error and defendant in error Durham could have the courts settle which one, as between themselves, should pay the debt, both admitting their liability as principals to the bank. Both pleaded suretyship, it is true, but neither offered a particle of evidence to sustain their pleas, but admitted their liability as principals, so far as the bank was concerned. The fact that suretyship was pleaded, without any evidence being offered to sustain the plea, of itself indicates a purpose to delay, and that fact alone justified the Court of Civil Appeals in finding that the appeal was for delay. Besides, the statute provides that the trial of a plea of suretyship may be determined at the same term of court when the main case is tried or at a subsequent term, but shall not delay the plaintiff's suit. Rev. Stats., art. 3813.

WILLIAMS, ASSOCIATE JUSTICE.—J. E. Blackwell and B. L. Durham were partners in the drug business with a stock of goods which, for convenience, is called the "Laclede stock." Desiring to purchase another

97 Supreme—29.

stock called the "Overton stock," they borrowed from the Farmers and Merchants National Bank $2819 with which to pay for it, and executed six promissory notes payable at different dates, five for $500 each and the sixth for $319. The purchase of the Overton stock was consummated, and, for a while thereafter, Blackwell and Durham, as partners, conducted two businesses in separate buildings. They soon agreed upon a dissolution, in which the Laclede stock, against which there was an indebtedness, was assigned to Blackwell, and the Overton stock was assigned to Durham. Durham claims that in this settlement Blackwell agreed to pay the notes given to the bank while Blackwell asserts that he agreed to pay only the note first to fall due, and that Durham assumed the others. Blackwell having paid the first note, and the second and third becoming due, the bank sued Blackwell and Durham upon them. Durham also instituted a suit against Blackwell, of which it needs only to be stated that it involved the controversy between them, as to the assumption of the notes held by the bank. Before the trial the two cases were consolidated, over the objection of the bank, and were tried together, resulting in the judgment now before us for revision. In the consolidated causes, neither of the defendants denied liability to the bank or claimed that at the inception of this indebtedness either was surety for the other; but each asserted that by the subsequent arrangement between themselves alone, the other assumed this obligation; and Durham also claimed that Blackwell's assumption was secured by a lien on the Laclede stock. The jury, in the District Court, found in favor of Durham that he was only a surety for Blackwell and that he had a lien on the property mentioned to secure Blackwell's obligation. Judgment was rendered in favor of the bank for the amount of the notes sued on against both defendants, but adjudging Blackwell to be principal and Durham a surety, and ordering execution to be first levied on the property of the former. It also declared and foreclosed a lien on the Laclede stock of goods and ordered the same to be sold and the proceeds applied to the payment of the judgment and the other notes held by the bank as they should mature. Blackwell alone appealed, making his supersedeas bond payable to both the bank and Durham.

In the Court of Civil Appeals the bank urged a cross-assignment of error complaining of the feature of the judgment which made Durham a surety and required the levy of the execution first upon the property of Blackwell. The court held that the bank, which had not appealed, could not, upon Blackwell's appeal, assign errors committed in favor of its coappellee Durham, and declined to consider this assignment. This ruling is sustained by the decision in Anderson v. Silliman, 92 Texas, 560. The bank also suggested that Blackwell's appeal as against it was for delay only and asked for judgment for the statutory damages, which was granted by the court upon its affirmance of the judgment below. This action is assigned as error here, but it will aid in the determination of the point to first pass upon the other assignments.

The Court of Civil Appeals correctly disposed of the point made as to the disqualification of the trial judge, and we need add nothing upon that subject. We think, however, there was error in adjudging a lien to exist upon the property of plaintiff in error. During the existence of a partnership each partner has a lien upon the partnership assets to secure the payment of the partnership debts, and this lien continues to exist after dissolution unless it is waived. But it is generally, though not universally, held that if one partner sells out to the other, the latter assuming payment of the debts, or if there is a division of the partnership property accompanied by a mere assumption of debts, the acceptance of the agreement to pay the debts is a waiver of the lien. This doctrine has been clearly announced in the decisions of this court. White v. Parrish, 20 Texas, 689; Rogers v. Nichols, 20 Texas, 724. But in such a sale, or division, the lien may be retained; and it is claimed by counsel for Durham that the facts show that it was retained in this instance. It is said that "if the purchasing partner agrees to pay the debts with or out of the assets, or to apply the assets or the profits to the debts, a trust fund is created, or, rather, the retiring partner has preserved his equity to insist upon an application of the assets to the debts and the courts will enforce it." 1 Bates on Part., sec. 552. It is unnecessary to determine whether this is the law in this State or not, for, if it be conceded that the rule thus is correctly stated, we are of the opinion that this case is not brought within it. The only evidence upon the subject is the following taken from the testimony of Durham:

"He, Blackwell, was to pay off these notes sued upon here. All those notes at the bank with and through his stock of goods at the Laclede building which he got in the division. We figured on how it could be done. He had a lot of accounts, I think some $1500 or $1600 worth, and he was to collect some of them if he could and then reduce his stock to pay off these notes. He had nothing else except this stock that he got to pay with that I know of, except the iron building down here, that he owns and has rented. I considered the property Blackwell got in the dissolution as security for these notes; that is, the stock that Blackwell has situated in the Laclede building. The only thing that was said about that we figured together how he was to pay off this indebtedness. We figured that he ought to be able to collect $1000 or $1200 out of the accounts and reduce the stock on hand by selling out and not replenishing and make the payments easy."

The principle relied on gives to a partner a general lien upon the partnership assets to secure payment of all the partnership debts, and this is the character of lien spoken of in the quotation which may be retained or preserved by one in a sale to another. It is this which is "waived" by a sale or division, without reservation, but which is held to be "preserved" when an intention to preserve it appears from the transaction. But this is not the kind of lien that Durham claims. He as-

serts a specific lien growing out of the agreement to secure this particular debt, a lien which is the creature of contract. In order to continue in existence the lien created by law it is only necessary, according to the authority relied on, that facts appear to overcome the inference of a waiver which would arise from a sale or division in consideration of a mere assumption of debts. But it is evident that facts which might justify an inference of the retention of this lien would not necessarily be sufficient to show the creation of a lien of a different character. There is no pretense of an agreement that the assets assigned to Blackwell should be devoted to the payment of partnership debts generally, and we are of the opinion that the evidence stated does not show an agreement to pay the particular debt with the property. If the first part of the statement stood alone it might possibly be held to mean that Blackwell made such an agreement; but that which the witness says is all that was said conveys no such meaning. It shows nothing but a discussion concerning Blackwell's probable ability to pay the debts, which might naturally arise in considering the feasibility of the proposed settlement. It evidences no purpose on the part of Durham to make, or of Blackwell to accept, a condition that the property should be applied to the payment of the debt or should be burdened with a lien. Besides what is stated as having been said, the evidence consists wholly of Durham's construction of or conclusion from the discussion. We think, therefore, the charge of the court submitting the question of lien, as well as the verdict and judgment declaring it, are without support in the evidence. Counsel for Durham have stated that no other evidence upon the subject can be had and ask that, if the judgment be held erroneous in this respect, it be reformed and final judgment be entered here, which we think can be done.

We think the Court of Civil Appeals also erred in allowing damages against Blackwell. We are not to be understood as holding that Blackwell and Durham, both of whom incurred this debt as principals, had the right to delay and complicate plaintiff's action by their controversy between themselves, arising out of their subsequent transactions. Such questions are not now of practical concern in the case. The cases were, in fact, consolidated and a judgment was rendered which gave a lien for Durham's benefit upon Blackwell's property to secure the bank's debt. To secure substantial relief from this Blackwell had to appeal and to suspend the judgment pending the appeal and therefore to make the bank a party. The assignments of error which questioned the correctness of this part of the judgment necessarily affected the attitude of the bank under it; and as this complaint is held to be sound we think the statutory penalty as for an appeal prosecuted for delay only should not have been imposed. It is true, however, that no action of the bank occasioned the errors of the District Court, and the judgment of that court is not reversed for any error in its favor. The erroneous features of the judgment arose wholly from the contentions of the

other parties. We think, therefore, the bank should not be taxed with any costs of the appeal, but only with those of the writ of error to this court.

The judgment of the Court of Civil Appeals will therefore be reversed and judgment will be rendered here which that court should have rendered; affirming the judgment of the District Court in favor of the bank for the amount of that judgment with interest from its date and all costs incurred by the bank in the District Court and in the appeal to the Court of Civil Appeals, against Durham, Blackwell and the sureties on the appeal bond of the latter; reversing the judgment of the District Court as between Blackwell and Durham, in so far as it adjudges a lien in Durham's favor and reforming it so as to omit such adjudication; but to otherwise remain as rendered, and adjudging in Blackwell's favor against Durham all costs incurred by him in the appeal to the Court of Civil Appeals, and against both Durham and the bank all costs of writ of error to this court.

*Affirmed in part; reversed and reformed in part.*