EGAN et ux. v. AMERICAN STATE BANK.

No. 4127.

Court of Civil Appeals of Texas. Amarillo.

Jan. 22, 1934.

Rehearing Denied Feb. 12, 1934.

Smith & Smith, of Fort Worth, for appellants.

Madden, Adkins, Pipkin & Keffer, of Amarillo, for appellee.

MARTIN, Justice.

Appellants, who are husband and wife, claimed in the trial court a homestead interest in an undivided one-half of two separate parcels of partnership property. The validity of their claim was denied as to one and recognized as to the other of these. Both sides assign error.

The material facts are as follows: One F. C. Klinke, about April, 1927, obtained from the Santa Fé Railway Company a leasehold interest on 4,880 square feet of its right of way in the town of St. Francis. A written lease of the premises was executed and delivered to Klinke. A grain elevator was in a short time erected thereon, and appellant C. F. Egan thereafter "participated in the actual management and operation of the elevator during each and every grain season, drawing a salary from the partnership of $150.00 per month for each month of his services as such," until August, 1931. On March 23, 1931, Klinke borrowed $6,000 from appellee, executing a note therefor and securing it with a lien on said elevator property. Thereafter about August, 1931, C. F. Egan filed suit No. 9065 against Klinke, the exact nature of which is not disclosed by this record, but which resulted in the appointment of a receiver for all partnership property, including said elevator, and the entry of a final judgment to which we shall hereinafter advert. In this suit appellee intervened and obtained judgment on said note against Klinke and appellant C. F. Egan, jointly as partners on September 5, 1931, for the sum of $4,095.98 and decree of foreclosure of its lien on said elevator property. To this suit the wife of Egan, and one of the appellants here, was not a party. On June 23, 1932, a final judgment was entered in cause No. 9065 between Egan and Klinke. This appears to have been partly upon stipulations of counsel and partly upon jury findings, and clearly appears to have been in part an agreed judgment. By its terms a partnership was found to exist between Klinke and Egan, their respective claims were adjudicated, and all the property adjudged to be Egan's, for which he received certain credits upon the debt found to be due him by Klinke. The receiver was discharged and the partnership dissolved. The judgment makes reference to the elevator property and appellee's debt in part as follows:

"And it further appearing that the said F. C. Klinke has executed a deed and bill of sale to the said C. F. Egan conveying said elevator, house and land to the said C. F. Egan, and that in consideration therefor the said C. F. Egan has credited the said F. C. Klinke with the sum of $2811.70, and has assumed the said indebtedness above referred to due the American State Bank of Amarillo, and that the said F. C. Klinke is entitled to a credit on this judgment of said sum of $2811.70. * * *

"It is further ordered, adjudged and decreed by the Court that the said C. F. Egan do have and recover of and from the defendant F. C. Klinke, the title and possession of the elevator building and lease and the res-

idence and land on which said residence is situated."

This judgment was acquiesced in by Egan, and became final as to both parties.

Prior to the date of this judgment, Klinke delivered proper conveyances of the two pieces of partnership property involved here to one of the attorneys for Egan in consummation of what appears to have been an agreement between them, accompanying same with the following letter:

"Amarillo, Tex., June 18, 1932.
"Mr. C. F. Egan,
"Amarillo, Texas.
"Dear Sir:
"I have today executed a deed and bill of sale to you covering the elevator which formerly belonged to St. Francis Grain & Coal Company, as well as the lease upon which it is located, between myself, as lessee, and Panhandle & Santa Fe Railway Company, as lessor, and a deed covering the house belonging to said St. Francis Grain & Coal Company and one acre of land upon which the house is situated.

"In consideration of this deed and bill of sale, you are to assume payment of a note secured by deed of trust on the elevator, payable to American State Bank of Amarillo, in the principal sum of $4,000.00, together with interest due thereon in the sum of $376.57; and in addition thereto you are to credit the purported judgment which you recovered against me in the case of C. F. Egan vs. F. C. Klinke, being cause No. 9065, in the District Court of Potter County, Texas, 108th Judicial District, said judgment having been entered on May 3rd, 1932, in the amount of $2811.70.

"By the execution of these instruments I do not in any way agree that said judgment is valid; but I do agree that I owe at least this sum of money to my partner in St. Francis Grain & Coal Company, and if for any reason the judgment which you recovered against me should be set aside, you will not owe me any further moneys by virtue of having accepted the elevator, lease and house, it being my intention to admit liability to the extent of $5,000.00 and to transfer the above described properties to you in cancellation of that much of my indebtedness.

"This covers all property located in said elevator except the grain left from the 1931 crop. (This last paragraph written in with pen.)
"Very truly yours,
"[Signed] F. C. Klinke."

Certain stipulations were made in the trial of this case reading, in part, as follows:

"It is stipulated in open court by and between the parties litigants, as follows:

"1. That all of the property involved in this suit, including the leasehold estate, the improvements thereupon situated, the acre of land and the improvements thereupon situate, including the residence house, was, at all times material to any matters involved in this suit, partnership property of the partnership of F. C. Klinke and C. F. Egan, doing business in the name of St. Francis Grain & Coal Company, and that the legal title to the leasehold estate and the acre of land was held by, and vested in, F. C. Klinke until on or about the 17th day of June, 1932, at which time same was transferred and conveyed to C. F. Egan by the deed and bill of sale which are in evidence in this case.

"2. That, at all times material to any matters involved in this suit, the defendant, C. F. Egan, and F. C. Klinke were partners, engaged *as* such partnership business buying and selling grain at St. Francis, Potter County, Texas, doing business in the name of St. Francis Grain & Coal Company, such partnership as found and decreed by the judgment of the Court in Cause No. 9065, which judgment is now in evidence in this case; but that, in this connection, it is not agreed by the plaintiff, bank, that it knew of the existence of such partnership at the time it accepted the note in suit and the security.

"3. That, from the inception of the partnership, down to and including the day of the institution of suit No. 9065, the partnership aforesaid of F. C. Klinke and C. F. Egan was, in all things, solvent."

It was also agreed that Klinke, on the date appellee's present suit was filed, was a bankrupt.

On December 13, 1932, appellee filed this suit against C. F. Egan, for its debt and for foreclosure of its lien against the elevator property and an undivided one-half interest in the residence property, both of which are mentioned in the letter quoted above, and pleading among others most of the facts already set out. To this Egan, joined by his wife, Iris L. Egan, answered at great length, but the only defense necessary to mention was their claim of homestead in both pieces of property. The only issue submitted to the jury was the following: "Do you find and believe, from the preponderance of the evidence, that J. H. Paul,

as President of the plaintiff bank, at the time F. C. Klinke executed the deed of trust introduced in evidence in this cause, knew that C. F. Egan was then a partner of F. C. Klinke in the St. Francis Grain & Coal Company?" To which the jury answered: "No." The judgment entered was for the amount prayed for with a foreclosure against both Egan and his wife on the elevator property, but a denial of foreclosure on the residence property. The judgment recites, in part: "And it appearing to the Court, and the Court so finds, that one F. C. Klinke, a co-partner of defendant C. F. Egan in the elevator property, had not prior to and including March 23, 1931, consented that defendant C. F. Egan might impress his interest in the co-partnership elevator property with a homestead claim, and accordingly plaintiff's lien on said property as acquired on March 23, 1931, is in all respects a valid and binding lien as against the claims being asserted in this suit by either and/or both of the defendants:".

No assignment of error specifically attacking the finding of the court last mentioned is found either in appellants' brief or the transcript. The disposition we make of one phase of the case will turn largely upon the legal effect to be given the nonconsent of a partner to a withdrawal and appropriation of partnership property for homestead purposes by his copartner. We will not pause to discuss the effect of the jury finding, nor the sufficiency of the evidence to support appellants' claim of homestead in the two pieces of partnership property in controversy. It is not clear to us that the jury finding has any controlling effect as against the wife of Egan, and the sufficiency of the evidence to support the claim of homestead will be assumed as to both pieces of property, though that as to the elevator rests upon evidence the sufficiency of which might cause us some difficulty if compelled to pass on it.

We dispose first of appellants' contention that the court erred in foreclosing appellee's lien on the elevator property, because the evidence shows it was their business homestead on the date appellee's lien came into being.

The solution of this question involves a consideration of the respective rights of co-partners in partnership property.

■ That a homestead exemption in Texas may attach to such property is now too well settled to require discussion, though this perhaps is the minority rule in the United States. See notes to the case of Jensen v. Wiersma, 4 A. L. R. page 318 et seq.

■ It is believed that the following well-settled legal principles control the disposition of the question presented.

We quote from the following authorities:

"It is settled by a train of decisions in the American as well as the British courts, that the joint effects belong to the firm, and not to the partners, and that a partner has no individual property in any specific assets of the firm, and no right during the existence of the partnership to the exclusive possession or use of any of its property. Instead the interest of each partner in the partnership property is his share in the surplus after the partnership debts are paid, and after the partnership accounts are settled, and the rights of the partners inter se are adjusted. Nothing is to be considered as the share of a partner but his proportion of the residue or balance after an account has been taken of the debts and credits, including the amounts paid by the several partners in liquidating firm debts or in making advances to the partnership." 20 R. C. L. p. 873.

Judge Montgomery, speaking for the Supreme Court Commission in the case of Sherk v. First National Bank, 206 S. W. 507, 509: "It is well settled that a — 'partner has no specific interest in any particular chattel or part of the property of the firm. His only interest is in a proper proportion of the surplus of the whole after payments of debts, including the amounts due the other partners.' Bates on Partnerships, § 180; Oliphant v. Markham, 79 Tex. 550, 15 S. W. 569, 23 Am. St. Rep. 363: Moore v. Steele, 67 Tex. 435, 3 S. W. 448."

Judge Williams for the Supreme Court in Blackwell v. Farmers' & Merchants' Nat. Bank, 97 Tex. 445, 79 S. W. 518, 519: "During the existence of a partnership each partner has a lien upon the partnership assets to secure the payment of the partnership debts, and this lien continues to exist after dissolution, unless it is waived."

See, also, 47 C. J. p. 911, and numerous authorities there cited.

Judge Stayton for the Supreme Court in Wiggins v. Blackshear, 86 Tex. 665, 26 S. W. 939, 940: "As every partner is liable for the debts of his firm, and owns its property in common with other partners, it is his right to have the common property applied to the payment of partnership debts, and all the other partners, without his consent, cannot take this

right from him. * * * If the partners are not themselves in a condition to enforce an equitable lien upon the partnership property, the creditors of the partnership cannot enforce a lien derived from them or from one of them. The equity of the partnership creditor continues so long as the equity of the individual partner continues, and no longer."

See, also, Waples-Platter Company v. Mitchell, 12 Tex. Civ. App. 90, 35 S. W. 200, 202; Euless v. Tomlinson (Tex. Civ. App.) 38 S. W. 534, 535; Luck v. Hopkins (Tex. Civ. App.) 54 S. W. 429, 430; Watts v. Dubois (Tex. Civ. App.) 66 S. W. 698, 701; Bates, Law of Partnership, vol. 2, § 1131.

Judge Gill, in Williams v. Meyer (Tex. Civ. App.) 64 S. W. 66, 70, (error refused): "If one partner should, without the assent of his copartner, be permitted to acquire a homestead right in the very property which he in part had contributed to the partnership fund, and upon the faith of which the other had continued in business with him and incurred firm debts, it would amount in many instances to a withdrawal of his entire contribution to the partnership assets; and the entire interest of his co-partner would thus be burdened with the firm liabilities, while his would be effectually covered by his exemption."

■ Could appellants withdraw a substantial, if not their entire, contribution to the partnership fund, without Klinke's consent, thus leaving him with the chance of having to pay alone every partnership obligation? If this is the law, Texas is sadly in need of remedial legislation on this subject. The quoted expressions from eminent judges lead us to conclude that we do not have, and have never had, any such unjust rule in this state.

It is not disputed that appellee's debt was a partnership obligation, and it cannot be disputed that Klinke had an equitable lien against all partnership property to secure him in its payment, unless he waived it. It is not an open question in Texas that a partner may withdraw partnership property from the common fund, with the consent of his copartners, and fasten upon it a homestead exemption. The condition annexed to such withdrawal is the consent of the copartner, which would, of course, constitute a waiver of what is called his equitable lien, but which perhaps may more accurately be described as a legal right. The answer to the question of whether or not the evidence in this case shows Klinke's consent to the withdrawal of a one-half interest in the elevator property from the partnership assets by appellants, and its appropriation by them as a homestead, furnishes a solution to one of the legal issues involved here. The court found he did not so consent at or prior to the execution of the note and deed of trust sued on by appellee. The evidence is abundantly sufficient in our opinion to show that he neither then nor thereafter consented. Some of this evidence is: That Klinke held the legal title to all the property, and that he thus withheld from appellants any chance to convey or incumber the record title; he vigorously denied and contested Egan's claim of any partnership or interest in the property; Egan was not known to appellee as a partner, its information being that Klinke owned same; and appellee who handled the elevator account was unaware of Egan's claim of partnership until some time after the date of its note. Egan drew a salary and participated in the management of the elevator, but it is not claimed that his possession or management was exclusive, and of an open and notorious character; he was temporarily living in Tarrant county and had been since about the December before appellee's note was given, and only worked around the elevator during the grain season. Consent may, of course, be express or implied; but there is no pretense of the existence of the former, and the conduct of the parties clearly, if not conclusively, rebuts the latter, and leads us to the conclusion that a trial court would be justified in finding that the idea of this property's withdrawal from the firm assets was an afterthought, occurring probably after Klinke had become bankrupt and this property had passed into receivership. We are of the opinion that the trial court's judgment as to the elevator property was correct, and cite, as supporting in their facts our conclusion, the cases of Williams v. Meyer (Tex. Civ. App.) 64 S. W. 66, and Allen v. Meyer (Tex. Civ. App.) 65 S. W. 645.

■ We consider next the appellee's contention that it was entitled to a foreclosure upon an undivided one-half interest in the residence property, consisting of one acre of land and the improvements thereon situated. Legal title to all of this stood in the name of Klinke, but it was partnership property. A residence was erected thereon in 1927, and appellants' family lived therein during the grain season and some of the time between seasons. Their possession and use was open, notorious, and exclusive. It was on a tract of land theretofore owned by Klinke, which was entirely separate and distinct from the elevator property. We think the evidence justifies the conclusion that the character of appellants' possession and use of same as a homestead sufficiently

evidenced an implied consent by Klinke to its withdrawal from the partnership assets and appropriation by appellants as a homestead. Swearingen v. Bassett, 65 Tex. 267. Such homestead character, however, could not attach to Klinke's one-half interest. Smith v. Chenault, 48 Tex. 455. The evidence we think conclusively shows that in the purchase of Klinke's interest in this tract by Egan and final settlement of their partnership accounts, the payment of appellee's indebtedness herein sued on was expressly assumed by appellant Egan. A vendor's lien therefore attached to the undivided one-half interest of Klinke, which is, of course, superior to any homestead claim of appellants. It follows, necessarily, that so much of the judgment as denied a foreclosure upon said one-half interest should be reversed and rendered in favor of appellee. Judgment will be entered foreclosing a lien against an undivided one-half interest in said one acre of land in favor of appellee against both appellants.

Affirmed in part, and in part reversed and rendered.