## GEORGE C. HATCH v. DE LA GARZA'S EX'R AND OTHERS.

Where, in a proceeding commenced in 1839, to foreclose a mortgage upon land, a citation had been returned not served, because the defendant was not found in the county, and at the ensuing term of the court, (Spring Term, 1840,) there was an order that the defendant be cited, by publication, to the next term, and at said return time, the defendant failing to appear, the court gave judgment against him; although no citation or writ of publication was found in the record, yet, it being recited in the judgment entry, that the publication had been made, according to law, and the order of the court, such judgment is not void upon its face, for want of the service which the law prescribed.

There is no error in the refusal of the court to instruct the jury, "that if they believed from the testimony," a certain fact stated in the charge asked, "they should find a verdict for the plaintiff," when the evidence did not warrant the assumption of the existence of such fact.

A judgment of a court of competent jurisdiction, which has not been successfully impeached, is conclusive of all matters then in litigation, or which might have been brought in litigation therein, by the defendant, touching the cause of action.

If there had been fraud in the contract, or any invalidity in the cause of action, it should have been set up as a defence, but cannot be made the ground of avoiding or impeaching the judgment, or of a claim for equitable relief, in a collateral proceeding.

Where a deed for land described the tract sold, by specific metes and bounds, and in the conclusion of such description, added "according to the original deed of grant from the government to Jose Sandoval, and containing one-half league, according to the above named grant," and there was nothing in the deed, or any fact proven in connection therewith, to show that the vendor represented or sold the land as containing any particular number of acres : Held, that the land was sold by defined and specific boundaries, without any representation as to quantity; and the fact that, upon a survey, it was found to contain only six hundred and nineteen acres, presented no ground upon which the vendee could found a claim for relief.

ERROR from Bexar.   Tried below before S. G. Newton, Esq., selected as special judge by the parties.

This cause was before the Supreme Court, at a former term, and will be found reported in 7 Tex. Rep. 60 ; subsequently to. which time, the defendant, Garza, died, and James L. Trueheart, his executor, was made a party, by an amended petition.

It appeared, from the allegations of the original and amended petitions, that in 1837, the plaintiff, Hatch, purchased of Garza two tracts of land, situate in Bexar county ; the first contained one league and a half, for which he paid $2,000, in cash,. and executed his note for $2,000 more, with a mortgage upon, the land to secure its payment; the second was sold to him as a half league, for which he executed his note for $1,000, with a mortgage upon the land to secure the same ; the last mentioned note being payable at the counting room of J. & N. Dick, New Orleans.

Plaintiff alleged, that Garza falsely and fraudulently represented to him, that the first tract of land was free from all incumbrance, and that he had a good and perfect title for the same; when, in fact, as Garza well knew, he had title only to an undivided moiety of the tract, and the other half was the property of Vicente, Rafael, and Carmon de la Garza, the children of the said Garza by Gertrudes Rivas, his first wife ; and he also represented, that the second tract contained one-half league, when, as he well knew, the said tract contained only six

12

hundred and nineteen acres; by reason of which representations, the plaintiff was deceived and defrauded, and induced to purchase the said land upon the terms aforesaid.

Plaintiff further averred, that he sent means to San Antonio, to his agents, to pay the larger note, but that they embezzled the same, which he did not discover until afterwards; all which was well known to Garza. He also went to New Orleans, with the means to pay the other note, but that it was not presented at the counting room of J. & N. Dick, at the time of its maturity, nor till after he left the city with his money; whereby he was put to much inconvenience and loss. That afterwards, Garza sued him upon said notes and mortgages, and he voluntarily appeared and acknowledged service, and "moved and obtained, for cause shown, the dismissal of said suits."

He also averred, that shortly afterwards, Garza, who well knew that plaintiff was a citizen of Colorado county, (having come to the Republic of Texas in 1836, and in March following filed his declaration of citizenship) again attempted to sue him on the same causes of action; and that, without obtaining personal service upon him, and without even presuming to aver that he was a non-resident of the country, and without plaintiff's having notice, obtained judgment against him, foreclosing said mortgages. That the said judgments were void, because he had no legal notice, either actual or constructive, of the said suits; but, by means of executions issued on the same, the said lands were sold to Garza; and that afterwards, upon motion of said Garza, without actual or constructive notice to him, the said sales were set aside, and other executions were issued, and the said land again, on the 6th of July, 1841, was sold; when the larger tract was bought by Garza, and the smaller by ——— Riddle, who afterwards conveyed it to the defendant, S. A. Maverick, the attorney of record of Garza in the said suits, and who connived and participated with him in his fraudulent actings and doings about the same. And since that time, the said defendants had had actual possession of the said land, and denied his right to the same, and the purchase money which he originally paid for the larger tract.

That when plaintiff became advised of these facts, he went to San Antonio, from his residence in Colorado county, and employed an attorney in attendance upon the District Court of Bexar county, which was then in session, to bring suit for his land aforesaid; but, before his petition could be completed, he and his said attorney, and said District Court, were on the 11th of September, 1842, taken prisoners, and carried to Mexico, from which he did not return to his residence in Colorado county, until during the next year, whereby he was prevented from commencing his suit at that time. He alleged that he has been at all times ready to redeem each of the said tracts of land, but had been prevented by the denial of his right by defendants; and by the additional consideration, that the amounts actually due on each of said mortgages, as appeared from what had been stated, was less than had been claimed, and had never been judicially fixed and ascertained, and had been more than paid, by the rents and profits derived by defendants from the said land, since they had had possession of it. He also charged that, since he purchased the said lands, they had greatly increased in value. A rescission of the sales, would enable the defendants to take advantage of their own wrong, and be unjust to him; and he therefore claimed the full benefit of the original purchase, together with the amount due him on account of the rents and profits of the said land, converted to their use; and the damages he had sustained, by reason of the trespasses committed upon the same, after deducting the true amount due upon the said mortgages and notes; and if anything should still be found due from him, he offered to pay the same. He prayed that the mortgages upon the larger tract, to the extent of the community property; and upon the smaller, so far as it extended beyond six hundred and nineteen acres, be declared void, on account of the fraud of Garza in the original sales; and that the judgments foreclosing said mortgages, and all of the proceedings under the same, be declared null and void; and that he might recover the land from defendants: and should it appear that Garza, subsequently to the original sale to the plain-

tiff, acquired title to the other half of the said larger tract, that he might have judgment for the same.

Trueheart, the executor, answered substantially as had been answered by his testator, admitting the original contracts, the foreclosure of the mortgages, and the sales and purchases of the land under them, but alleged that these were all fair. He alleged that Garza's title to the larger tract was good; that the smaller one was sold by metes and bounds, and was not represented as containing a half league, or any particular quantity of land; and expressly denied the charges of fraud and misrepresentation. He admitted that the defendants had been in possession of the land, since the sale under the judgments foreclosing the mortgages; and denied that since that time, the plaintiff had any right to said land; he also admitted that the land had greatly increased in value; but averred that the plaintiff himself rescinded the sale, by a failure and refusal to comply with the terms of his contract, and that thereby Garza was entitled, either to foreclose the mortgages, or claim the absolute title to the land: and, if it should be held that said judgments and sales were null and void, he asked that plaintiff should be held to have abandoned the original contract, by his gross neglect and laches, and failure to comply with its terms. The defendant, Maverick, answered by a general denial.

On the trial, the plaintiff read in evidence, the deed from Garza, for the two tracts of land; the first, purporting to be for a league and a half; the second, describing the land conveyed, as follows, viz: "Situate in the forks of the river San Antonio and "the Salado creek, and commencing a little above Pumpkin ford, "(Paso de la Calabaza,) and following said river San Antonio "down to the mouth of said creek, thence following the mean-"ders of the creek up, so as to form a triangle, according to the "original deed of grant, from the government to Jose Sandoval; "and containing one-half league of land, according to the above "named title."

Copies of records of two suits in Bexar county, by Garza against the plaintiff, (wherein Maverick was Garza's attorney,)

to foreclose the mortgages upon said land, commenced March 28, 1839; and which were dismissed, upon motion of the defendant, in October, 1839.

Also, copies of two other records of suits, in the District Court of Bexar county, by Garza, (in which Maverick was also his attorney,) against plaintiff, to foreclose the said mortgages, and sell the land, commenced the 23d October, 1839, the said notes and mortgages being a part of the petitions; upon the reading of which, at October term, 1839, it was considered by the court, that rules be issued and served upon the said Hatch, at least ninety days before the next term of the court; that unless the amounts due upon the said notes were paid, on or before the next term of the court, to be held on the second Monday in March, 1840, judgment would be given, according to the said mortgages, notes and petitions. A writ was issued to the sheriff, in accordance with this order, on the 23d of November, 1839, to which he made the following return, to wit:

"Came to hand November 23d, 1839. Not served on the "party, because not found in the county; but necessary publi-"cation made by J. W. Smith, deputy and acting clerk, on 23d "November, 1839.                    J. L. HOOD, Sheriff."

At the March term, 1840, it was ordered by the court, that notice should be given, by advertisement, as required by law, in some public gazette, that said suits were pending; and that unless the principal, interest, damages and costs, were paid by the first day of the next term, judgments would be given for the amounts due, and foreclosure of said mortgages, &c. It was also ordered, that the "judgment *nisi*," or rule granted at the last term, be revived and renewed: and should the defendant return to the Republic, in time for the personal service of the order of this court, the same should be served upon him, at least ninety days before the next term of the court. The writs of publication, directed to be issued, were not found in the transcripts; but at the ensuing term of the court, judgments were given for the plaintiff, and to foreclose said mortgages, in the

entries of which were the following recitals : · "In this case, "publication having been made, as required by law, and accord- "ing to the order of the court, and the same made. evident to "this court here, and no part of the debt having been paid," &c. It further appeared, from these records, that orders of sale issued ; and that, at the sale, Garza became the purchaser of both tracts ; which sales were, at the next term of the court, set aside, upon motion of Garza, because the appraisers had not been sworn ; and alias executions were ordered to be issued, under which the sheriff proceeded again to sell said lands, on the first Tuesday in June, 1841, when the plaintiff, Hatch, be- came the purchaser of both tracts ; but, having failed to com- ply with the terms of said sale, the sheriff sold the same again, upon the first Tuesday in July, 1841, when Garza became the purchaser of the larger tract, and W. J. Riddle the purchaser of the smaller one.

F. L. Paschal, a witness for plaintiff, said, he had known the plaintiff, (Hatch,) since 1838. He was "off and on" here, until the fall of 1839, and never lived here permanently, after the fall of 1837. It was a series of years afterwards, before he removed with his family to Texas, at all. He then lived in Colorado county ; thinks Hatch was not living here in 1840, though he may have been here in 1840 ; knows he was here in 1841. He was here as a transient person, and was here again after the sales. On cross-exmination, he said, he knew that Hatch had knowledge of the sales, and of the suits ; thinks he was here at the sales. There was a sale previous to the last sale ; and Mr. Van Ness, as attorney of Hatch, bought the property in. After the sale was made, witness had a conversation with Hatch ; he (Hatch) said he was ruined by the sales under the mortgage judgments, and was thunderstruck when he heard of them. Re-examined.—Hatch knew of the sales. I was sheriff after Hood. I think I was elected in June, 1840.

Plaintiff introduced the survey of the smaller tract, made by or- der of the court, by which it was shown to contain only six hundred and nineteen acres. He proved that Gertrudes Rivas, the first

Hatch v. Garza.

wife of the defendant, Garza, died in 1824, leaving surviving her three children, to wit, Vicente, Rafael, and Carmon de la Garza. He also introduced, as evidence, a deed made by Vicente and Rafael, by the consent of their father, the defendant, and by him, as the attorney in fact of Carmon, to Griffin Bayne, for a half league, out of a two league grant, the remaining league and a half of which was sold to the plaintiff; and which it was recited, in the said deed, they acquired as the heirs of their deceased mother.

Defendants gave in evidence, receipts from Garza's three children, for all interest in their deceased mother's estate, of the following dates, to wit: from Carmon Garza, September 10th, 1835; from Vicente Garza, August 20th, 1837; and from Rafael Garza, March 9th, 1844: a copy of the grant to Sandoval, of the smaller tract of land, in which it was described as a half league, as in the deed from Garza to the plaintiff: the sheriff's deeds to Garza and Riddle: and the deed from the latter to the defendant, Maverick. He also proved the loss of the executions, and their contents; and the sale, under them, by Paschal, the sheriff, by whom the land was sold: and he proved by several witnesses, substantially the same facts, as to plaintiff's residence, and occasional visits to San Antonio, from 1838 to 1842, as had been testified to by the plaintiff's witness.

The court refused to give the following instructions, which the plaintiff's counsel asked should be given to the jury, viz:

"If the jury believe, from the evidence, that plaintiff was not "a non-resident of Texas, from the 15th of March, 1840, until "the 1st of September thereafter, they will find a verdict for the "plaintiff.

· "If the jury believe, from the evidence, that the plaintiff was "a citizen of the Republic of Texas, in 1839, and that he was "present in the Republic, during that year, the presumption of "law is, that he remained and continued a resident of the Re-"public; and it rested upon the defendants to show affirmatively, "that he had left the country, and had continued out of the

"country, from March until September, 1840, to make good and "valid the judgments of foreclosure."

*Alexander*, for plaintiff in error. The two league grant, of which de la Garza sold one league and a-half to Hatch, having been proven to be the common property of de la Garza and his first wife, Gertrudes Rivas, by the deeds to Hatch and Bayne, and the testimony of Antonio Manchaca, (uncontradicted,) the verdict was contrary to the evidence. De la Garza, by selling to Hatch, as his own, a tract in which he had only a community interest, as he well knew, committed a fraud upon Hatch; and by inducing him to execute his promissory note, for the balance of what was the just price of the tract, (viz. for $2,000, the balance of $4,000,) and then suing for the amount of the note, brought himself within the terms of the law then in force. (L. 44, tit. 2. p. 3; Moreau & Carleton's Partidas, pp. 60, 51.)

Having received one-half of the just price of the tract, (in which his community interest amounted, at most, to two-thirds of the league and a half, or one half of the two league grant,) in what condition was the mortgage? Could it have been foreclosed, to the full amount, without fraud? Was not his judgment of foreclosure, a fraud upon Hatch? The use of both tracts since 1841, has paid for the smaller tract. Such being the case, Hatch owes nothing for the smaller tract of 619 acres, sold as a half league; and even if the deficit, in its quantity, (a corresponding deficit in price being lesion; *vide* the cases of Pew v. Ward, 10 Tex. Rep. 179; Means v. Robinson, 7 Id. 502; Coles v. Perry, Id. 109, and the authorities cited,) go for nought, the foreclosure of the mortgage upon it, was a cumulative fraud upon Hatch.

Even if the judgments of foreclosure, were not vitiated by fraud, as between the original parties, and the plaintiff's attorney of record, both those judgments, and the sales had under them, can be attacked on account of their nullity, arising from want of notice. Neither the statute of 1836, establishing District Courts, (p. 201, § 7, 8,) nor the statutes of 1838, (p. 12,)

nor of 1840, (pp. 69, 70) repealed that well settled principle, pervading the Roman, Spanish, and Mexican law, requiring notice. (1 Moreau & Carleton's Partidas, pp. 322–3.) By the civil law, the defendant must be cited to appear and defend. (Escriche, p. 294; 2 Sala Hisp. Mejic. pp. 209, 220; Curia Filipica, p. 66; 1 Montalban's Proc. Judiciales, p. 243; Escriche's El. p. 259; Sala's El. Lib. Instruido, p. 288.)

There must be a *contestatio litis*. (1 Wood's Inst. of Civil Law, p. 318; 1 Moreau & Carleton's Partidas, p. 323; Curia Filipica, p. 73 (4.) where L. 8. t. 10, p. 3, is cited.)

There must be a citation to hear sentence. (2 Sala Hisp. Mejic. pp. 216, 217; 1 Moreau & Carleton's Partidas, p. 265,) or the sentence (i. e. judgment) is null.

The failure to pursue the law, as to notice, in the suits for foreclosure, is cumulative of the fraud. If de la Garza had been ignorant that he had only a community interest in the larger tract, and that the smaller contained only 619 acres; and had Hatch paid him the just price for a league and a half, and for a half league of land; what rights would Hatch have had under the then existing law? (Pothier on Sales, p. 288, § 474.) As it is, de la Garza, and his attorney of record, having, between them, $2,000 of Hatch's money, and all of the land sold, to which de la Garza had title, (viz, his community interest in the larger tract, and the smaller tract, consisting of 619 acres,) have had the use of the money and land, from the date of their deeds until now.

*R. Howard*, for defendant in error. I. In regard to the suits for foreclosure, the judgments in which this suit attempts to attack. The court below had jurisdiction of the subject matter, and the persons of the parties, by the Act of 1838, which was strictly pursued. (Act of 1838, p. 11; Hart. Dig. Art. 2503.) The manner of citing the parties was legal, and was in lieu of, and equal to personal service; moreover, these were proceedings *in rem*. (4 La. Rep. 258; Bromley v. Smith, 2 Hill's Rep. 517; Schlater v. Broaddus, 3 Mart. Rep. N. S. 321.) The

Act regards the form and the remedy merely, is constitutional, and the law presumes notice. (3 Port. Rep. 193; 1 Blackf. Rep. 115; 1 Kent's Com. 445, 460; 3 Story's Com. 251; Hart v. Seixas, 21 Wend. Rep. 40; Bromley v. Smith, 2 Hill's Rep. 517; Cole v. Hall, Id. 625; Grignon v. Astor, 2 How. Rep. 319; Dufour v. Camfranc, 11 Mart. Rep. 607; Seymour v. Cooley, 9 La. Rep. 72; 2 La. Cond. Rep. 342, 422, 429.)

II. Jurisdiction having attached, the judgments are not a nullity, and everything in their favor will be presumed. (Dufour v. Camfranc, 11 Mart. Rep. 607; Voorhees v. Bank of United States, 10 Pet. Rep. 449; Hollingsworth v. Barbour, 4 Pet. Rep. 466; Harris v. Hardeman, 14 How. Rep. 334; Stevens v. Baird, 9 Cow. Rep. 274; Grignon v. Astor, 2 How. Rep. 319; Linnendoll v. Doe, 14 Johns. Rep. 222; Dartmouth College v. Woodward, 4 Wheat. Rep. 518; Jackson v. Caldwell, 1 Cow. Rep. 622; Allen on Sheriffs, 174; 2 Hill's Rep. 517, and Id. 625; Hart v. Seixas, 21 Wend. Rep. 45–49; Ex parte Tobias Watkins, 3 Pet. Rep. 193; Melancon v. Duhamel, 10 Mart. Rep. 225; Beebe v. Bank of New York, 1 Johns. Rep. 529; Tillotson v. Cheetham, 3 Id. 95.)

III. Fraud, mistake, or misrecital, in a matter *previous* to the obtaining of the judgments, cannot be set up or proved, to attack them. It must be pleaded, and proved at the trial, when the judgments were obtained. (Marine Ins. Co. vs. Hodgson, 7 Cranch's Rep. 332; Homer v. Fish, 1 Pick. Rep. 435; Jackson v. Livingston, 1 Johns. Ch. Rep. 322.)

IV. Equity will not relieve a party guilty of laches, or gross neglect; or against a vendor, when the vendee fails to pay the purchase money, according to the terms of his contract. Limitation runs as well at equity as at law. (Vide cases cited in Art. iii. of this brief.) 1st. A vendee, failing to pay the purchase money, cannot hold the land; the paramount title is in the vendor. (Browning v. Estes, 3 Tex. Rep. 462; Estes v. Browning, 11 Id. 237; De Cordova v. Smith, 9 Id. 129; Smith v. Clopton, 4 Id. 109; Grignon v. Astor, 2 How. Rep. 319; Ashton v. Boore, 5 Ves. Rep. 719; 11 Wheat. Rep. 55;

2 Story's Eq. §§ 771, 983, 985.)   2d. He loses the purchase money previously paid. (11 Tex. Rep. 237.)   3d. A sale by bond and mortgage, or a conveyance by bond and mortgage back, is a contract executory, and not executed.   They are parts of each other, and form one contract. (Dunlap v. Wright, 11 Tex. Rep. 597.)   4th. Limitation runs, until the special matter sought to be barred is pleaded, even after suit brought.   (Fowler v. Stoneum, 11 Tex. Rep. 479.)

WHEELER, CH. J.   The suits to foreclose the mortgages, had been instituted, and were pending, when the Act of the 5th of February, 1840, was passed, "to provide for the foreclosure of mortgages," (Hart. Dig. Art. 2505,) and the subsequent proceedings were properly conducted in accordance with the provisions of the Act.

There had been a citation, not served, because the defendant was not found in the county.   An order of publication, as provided in the case of non-residents, was then obtained ; publication was made; and the defendant failing to appear, the proper judgment was rendered.   The judgments are not, upon their face, void, for the want of the service which the law prescribed. Nor has the plaintiff proved the truth of the allegations, on which he seeks to avoid and annul them ; that is, that at the time of the service, by publication, he was a resident of the country ; and that the judgments were fraudulently obtained. On the contrary, the proof is, that he did not remove to fix his residence in the country, until after his return from his captivity in Mexico, in 1843.   There was no evidence to warrant the court in giving instructions to the jury, which assumed that they might find his residence to have been in this country, at any time during the pendency of the suits.   Nor was there evidence of any illegality, or fraud, in obtaining the judgments. The plaintiff has wholly failed to establish the alleged nullity of the judgments.   Upon their face, they are valid judgments, rendered by a court of competent jurisdiction; and are, of course, conclusive of all matters therein litigated, or which

might have been brought in litigation therein, touching the cause of action, by the defendant. If there had been fraud in the contract of bargain and sale, out of which the mortgages arose, or any invalidity in the cause of action, it should have been set up as a defence. These questions are as completely concluded, by the judgments, as if they had been set up as defences to the suits, and had been therein decided against the defendant. They cannot be made on the ground of avoiding, or impeaching the validity of the judgments, or of a claim for equitable relief, in a collateral action. (Foster v. Wells, 4 Tex. Rep. 101; Weathered v. Mays, Id. 387; Grassmeyer v. Beeson, 18 Id. 753.)

But, if these judgments were out of the way, the plaintiff has wholly failed to prove any fraud, or unfairness, in the sale to him of the land, or any matter on which to found a claim for relief. The allegation, that his vendor had title but to half the land conveyed in the larger tract, is disproved. It is shown that he had obtained full acquittances from the heirs of his former wife, whose estate he is charged to have sold; and as to the alleged false representations, respecting the smaller tract, none are found. It was sold by defined and specific boundaries, without, so far as appears, any representation as to the quantity. And where land is thus sold, that the quantity turns out to be less than as described in the deed, is no ground for rescinding the contract. There is no error in the judgment, and it is affirmed.

Judgment affirmed.