ARMISTEAD McGUIRE v. THE STATE.

1. REASONABLE DOUBT.—It is not error to instruct the jury that a *reasonable doubt* is not a whimsical or vague doubt.

2. ASSAULT WITH INTENT TO MURDER.—See facts held insufficient to sustain a verdict.

3. ACCIDENTAL INJURY.—See facts held sufficient to show that the injury done by the accused was accidental.

APPEAL from Brazos. Tried below before the Hon. A. S. Broaddus.

*Davis & Beall*, for appellant, cited McElvin *v.* The State, 30 Ga., 871; Dove *v.* The State, 3 Heisk., 348; Tweedy *v.* The State, 5 Iowa, 433.

*George Clark*, for the State, cited Shultz *v.* The State, 13 Tex., 401; Giles *v.* The State, 6 Ga., 276; Wyler *v.* The State, 25 Tex., 188.

DEVINE, ASSOCIATE JUSTICE.—Appellant was convicted on the 24th of July, 1874, of an assault with intent to kill and murder one Sam Johnson, in the county of Brazos.

The defendant's motion for a new trial being overruled, he has appealed, and assigns as error, among others, the charge of the court, the refusal to give the instructions asked by defendant, and that the verdict of the jury is contrary to the law and the evidence.

The charge of the court gave the law of the case to the jury in terms sufficiently explicit and full to enable them to pass understandingly on the case before them, and there was no error in stating to the jury that a reasonable doubt was not "a whimsical or vague doubt," and there was no error in refusing to give the instructions asked by defendant. These instructions had been given in substance in the general charge of the court.

There was no error in the court's disregarding the two affidavits filed in support of the motion for a new trial. At the most this testimony would have been merely cumulative. The defendant showed no diligence or effort to obtain this testimony. He had been indicted more than two years before the taking of these affidavits. A mistrial occurred eight months before, and this evidence could have been produced had any effort been made.

That "the verdict of the jury is contrary to the law and the evidence" is, we believe, evident from an examination of the statement of facts.

The substance of the evidence on the trial was the statement of Johnson, the person injured. He stated that he was cut by a pocket-knife in the hand of defendant; that at the time he was standing in a "ten-pin alley;" had not seen defendant for some little time previous to the cutting; defendant came up behind him and stabbed him in the left breast; witness and defendant were on friendly terms at the time, and are now; did not know whether defendant did it on purpose or not; did not think defendant had anything against him; "thought the defendant had been persuaded to do it by another man."

The physician who dressed the wound stated that the wounded man came to his house, and requested his services to dress the wound; that defendant McGuire was near the gate or house of witness; that witness directed the wounded man to go to a place where he could make an examination; that defendant and Johnson went off together, and stopped at a room near "the ten-pin alley," where witness examined, probed, and dressed the wound; that the knife had penetrated the cavity of the chest about three inches; that the wound indicated that considerable force had been used; that the direction of the wound was straight from the point of entrance; that it was not likely that the wound was inflicted in play; that "the cut could have been made in jest or play;" that "defendant was present when he examined and dressed the wound."

The proprietor of "the drinking saloon" stated that Johnson and defendant took a drink at his "bar," and passed into "the ten-pin alley;" that both were under the influence of liquor; heard them making a noise, and about the same time heard Johnson say, "Armistead, you have cut me;" heard accused reply, "Well, Sam, you know I did not cut you on purpose." Witness stepped into the

alley; saw defendant crying, and offering to go with Johnson for a doctor; defendant and Johnson went off together in the direction of Dr. Smyth's residence.

Another witness testified that Johnson was intoxicated, drew out his knife, opened it, and said to defendant, "Armistead, here's science," and threw his knife towards defendant; at which defendant took out his knife from his pocket, opened it, saying, "Sam, that is no science— here is science," and manœuvering with the knife, Johnson caught the hand of defendant, and jerked it against his * * breast; that Johnson then said, "Oh, Armistead, I am cut;" that defendant said, "Sam, I did not do it on purpose;" that defendant went off with Johnson in the direction of Dr. Smyth's; that they returned together, and that the parties had no quarrel.

This witness, on the cross-examination, repeated the statement that the wound was caused by Johnson grasping the hand of defendant and jerking it against his own breast.

There is nothing in the evidence that justifies the verdict of guilty. The evidence of the physician who examined, probed, and dressed the wound, that it was a straight cut, shows the great improbability of the blow being given by one standing behind Johnson, as sworn to by him; and the evidence of two witnesses quite as credible as Johnson, from all that is before us, contradict in the most unequivocal terms his statement on this point. All the witnesses who were present concur in their statements respecting Johnson's exclamation when wounded and defendant's answer at the moment, and explain the manner of or cause of the wound. They leave the house together; call at the physician's; go to a distant place, where the wound is dressed, defendant being present, and then return together to the place where the wound was inflicted. If there had been anything indicating a quarrel between them or malice on the part of the accused, it is highly

improbable and utterly inconsistent with such facts that the wounded man would go out hunting up a doctor with his would-be murderer, or that those present would have permitted Johnson, wounded as he was, to go alone with the accused.

While we are not inclined to interfere with the verdict, where the facts, taken as a whole, might support the finding, it is evident that in this case the evidence does not support it, and that it should be set aside.

For the error in refusing to grant a new trial, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.