**FARMERS' NAT. BANK et al. v. DUBLIN NAT. BANK et al.**

No. 969.

Court of Civil Appeals of Texas. Eastland.
Oct. 7, 1932.

Rehearing Denied Dec. 16, 1932.

Bryan, Stone, Wade & Agerton, of Fort Worth, and R. L. Thompson, of Stephenville, for appellants.

Fred C. Chandler and Chandler & Keith, all of Stephenville, Arthur R. Eidson, of Hamilton, and J. A. Johnson, of Stephenville, for appellees.

FUNDERBURK, J.

Originally this suit was brought by the Dublin National Bank (hereinafter called the Dublin National) against R. H. Stephens upon a promissory note for the principal sum of $5,-533.15, and for foreclosure of a chattel mortgage lien upon certain cattle. W. W. and Bart Oats (hereinafter referred to as the Oats) were also made defendants, and damages claimed against them in the sum of $3,245 for an alleged conversion of 76 head of the mortgaged cattle. By a first amended original petition the plaintiff brought in the Farmers' National Bank of Dublin (hereinafter referred to as the Farmers' National) and Mack Morgan, sheriff of Hamilton county. The Farmers' National was joined because it claimed a mortgage on the same property and there was also asserted against it a claim for damages on the ground that it had participated in the conversion of a portion of the cattle. Injunction was sought against the Oats to restrain further prosecution of a suit which they had instituted in Hamilton county against the Dublin National, the Farmers' National, and said Mack Morgan, sheriff, claiming a wrongful sequestration of part of the cattle by the Dublin National. In its third amended original petition plaintiff brought in as other parties defendant Breedlove Livestock Commission Company, a partnership, and the individual members composing it (which Breedlove Livestock Commission Company, including the individual members, will hereinafter be referred to as the commission company), and besides amplifying the former allegations, charged a joint conversion by defendants R. H. Stephens, the commission company, and the Farmers' National of 56 calves covered by its mortgage, and which calves were sold by the commission company in Fort Worth, Tex., about January 8, 1930.

The commission company filed a plea of privilege, which was duly controverted by plaintiff on the ground that the Farmers' National, a resident defendant in the county of the suit, was a joint conversioner with said commission company. Subject to that plea it further answered, among other things, that R. H. Stephens, the mortgagor, sold the cattle with the consent, express or implied, of plaintiff, thereby waiving its lien, if any there was. In the alternative, by way of cross-action against the Farmers' National, it alleged facts to show a mutual mistake in the payment to the latter and acceptance by it of the proceeds of sale of said 56 calves, or that R. H. Stephens was the agent of said bank, or that the bank had fraudulently accepted such proceeds, by reason whereof the amount of the payment was claimed as for money had and received.

The Oats answered, claiming the cattle which plaintiff had sequestered, but in the al-

ternative and by way of cross-action against the Farmers' National, claiming damages in the amount of $2,000, the purchase price of the cattle paid to said bank upon its representations and statement to them that it held a mortgage on said cattle, when in fact the plaintiff held the mortgage.

The Farmers' National answered, first, by a plea in abatement, because of the pendency of the Hamilton county suit against it by the Oats (i. e., the suit which the plaintiff herein sought to enjoin). Subject to its said plea in abatement, it claimed as against the plaintiff that the latter had no mortgage lien on any of the cattle; that said defendant did have a valid mortgage, and, in any event, that the mortgage of said defendant was superior to that claimed by the plaintiff. For further answer it adopted, by reference, the allegations of its answer to the cross-action of the Oats. In reply to the cross-action of the Oats it alleged that the Oats' cause of action, if any, was against plaintiff for a number of reasons, namely: (1) Because the latter had no valid lien; (2) because it had consented for Stephens, the mortgagor, to sell the cattle, and had ratified several sales by him over a period of years, wherefore the lien was waived and plaintiff estopped to assert same; (3) that the cattle were not included in plaintiff's mortgage; (4) that the Oats were negligent in not ascertaining the existence of plaintiff's mortgage, wherefore the payment of the $2,000 purchase price for the cattle to it was voluntary and induced by no false representations.

The plea in abatement of the Farmers' National was overruled and exception taken. A motion for continuance of the Farmers' National, on the ground that it had not been cited to answer the cross-action of the commission company and had not waived service of citation nor entered its appearance to same, so as to require it to answer ready for trial at that time, was likewise overruled and due exception taken to such action. By agreement of all parties the plea of privilege of the commission company was tried with the main case.

The jury to whom the issues of fact were submitted found: (1) That 56 calves sold by the commission company on January 8, 1930, were included in plaintiff's mortgage dated October 21, 1929; (2) that the 37 cows, 37 calves, and one bull sold by R. H. Stephens on September 5, 1930, to the Oats, were included in said mortgage, the debt secured being for the original purchase price of said cattle; (3) that neither the said 56 calves, nor (4) the 37 cows, 37 calves, and one bull were covered by any mortgage of the Farmers' National; (5) that Joe Little for the Farmers' National participated in the sale of the cattle on September 5, 1930, to the Oats; and (6) that he participated in the sale of January 8, 1930, by the commission company; (7) that E. W. Harris, president of the plaintiff bank, did not consent (expressly or impliedly) to the sale of cattle to the Oats, nor (8) the sale of the 56 calves by the commission company; (9) that said R. H. Stephens, in the sale of the 56 calves, was not acting as agent of the Farmers' National; (10) and (11) that the sale price of the 56 calves and of the 37 cows and 37 calves and one bull was the fair market value of same; (12) that Joe Little, cashier of the Farmers' National, stated to Bart Oats that his bank had a mortgage on the cattle the latter was proposing to buy, and that it was agreeable with said bank for Oats to purchase cattle from Stephens, provided the consideration of $2,000 was paid to said bank; (13) that by reason of such statement, the Oats were induced to pay the consideration of $2,000 to said bank; and (14) that the description of the cattle in plaintiff's mortgage was sufficient to enable one to locate and recognize the cattle by aid of inquiry based on what the mortgage itself indicated.

The judgment of the court recites an election of the plaintiff "to foreclose its mortgage and mortgage lien upon all of the cattle which it now has in its possession, by virtue of the levy of the writ of sequestration herein, and for its damages for the conversion of all the other cattle covered by its mortgage and mortgages." It was adjudged that plaintiff recover of R. H. Stephens the principal, interest, and attorneys' fees on the note, together with a foreclosure against all the defendants of the mortgage lien on 37 cows, 25 calves, and one bull, with order of sale, etc.; that plaintiff recover of the Farmers' National, the Oats, and R. H. Stephens, jointly and severally, the market value of 13 head of calves "sold by the defendant Oats, since said calves were acquired by them, which amount is the sum of $247.00," with interest, etc. That plaintiff recover of R. H. Stephens, the Farmers' National, and the commission company, $2,333, with interest, costs, etc.; that the commission company recover over against Farmers' National the said sum of $2,333, if the former was required to pay it; that the Oats recover upon their cross-action against the Farmers' National the sum of $2,000 with costs, etc., provided the Oats pay to plaintiff bank the said sum of $247. The judgment also permanently enjoined the prosecution of the Hamilton county suit, decreeing that all matters in said suit as to all parties were litigated in the instant suit.

The Farmers' National and the commission company have appealed. The Oats did not appeal, but have elected, as appellees, to stand upon their judgment on their cross-action against the Farmers' National.

So many propositions and counter propositions of such complicated nature are urged that we shall not undertake to state and discuss each of them separately.

The action of the court in overruling the plea of privilege of the commission company we think was correct. The jury found that the Farmers' National, a resident of Erath county, participated in a conversion of the mortgaged cattle, along with R. H. Stephens. We have concluded that the evidence did show a joint conversion by the Farmers' National and the nonresident parties charged with the conversion of the 56 calves. We omit further discussion of the matter here, as it will be taken up later.

The Farmers' National was not prejudiced by the overruling of its plea in abatement. In the Hamilton county suit it was urging its privilege to be sued in Erath county. The judgment herein permanently enjoins further prosecution of that suit. The issues involved were declared to be the same. It therefore affirmatively appears that the purposes of the plea of privilege in the Hamilton county suit were effectively accomplished and the liability of the Farmers' National has been litigated in the county of its residence. The action of the court in permanently restraining further prosecution of the Hamilton county case is not challenged in this appeal.

As a defendant in the case, the Farmers' National, having been subjected to the jurisdiction of the court so as to require it to answer or respond to the demands of the plaintiff, was required to take notice of the filing of the cross-action of its codefendant, the commission company. As we pointed out in Cornelius v. Early, 24 S.W.(2d) 757, a different rule has been recognized as applying to plaintiffs and defendants in this respect. That difference, although apparently arbitrary, was recognized and reaffirmed by the Supreme Court in Early v. Cornelius, 120 Tex. 335, 39 S.W.(2d) 6. There was therefore, we think, no error in the action of the court in overruling the motion for continuance.

The contention that the mortgage of the Dublin National Bank was not sufficient as constructive notice, because the copy filed in Hamilton county was witnessed by C. E. Leatherwood, cashier and stockholder of the mortgagee bank, cannot be sustained. We regard the law as settled that the fact of interest of a subscribing witness in the subject-matter not appearing by the mortgage itself, does not prevent the registration of the mortgage from constituting constructive notice. No question is presented of the validity of the mortgage, nor of its admissibility in evidence. The question is whether or not the effect of the registration of the mortgage as constructive notice could be destroyed by parol testimony that one of the subscribing witnesses was cashier and a stockholder of the Dublin National. We regard the question of the validity of constructive notice, under the conditions and circumstances here presented, as having been settled, since the decision in Titus v. Johnson, 50 Tex. 224. See,

also, 1 C. J. 773, § 55; Coffey v. Hendricks, 66 Tex. 676, 2 S. W. 47; Southwestern Mfg. Co. v. Hughes, 24 Tex. Civ. App. 637, 60 S. W. 684; Henke v. Stacy, 25 Tex. Civ. App. 272, 61 S. W. 509; Hartley v. Frosh, 6 Tex. 208, 55 Am. Dec. 772; Peterson v. Lowry, 48 Tex. 408.

The most important question in the case, measured by its effect upon the various issues involved, and the proper judgment to be rendered, is that arising upon the contention of the appellant Farmers' National, to the effect that the undisputed evidence showed that R. H. Stephens, the mortgagor, made the two different sales of the cattle—one of 37 cows, 37 calves, and one bull, to the Oats, and the other of 56 calves to unknown parties by and through the commission company—with the consent of the mortgagee, Dublin National. We have concluded that, as to the sale of the 56 calves, there being no evidence of express consent, the evidence of facts from which consent could be implied was not such as to show implied consent as a matter of law. We understand the rule to be that, when the ultimate fact in issue is one to be determined as an inference or implication from other facts in evidence, it is only when but one reasonable inference can be drawn from the undisputed facts that the court is warranted in holding the inferred fact to be conclusively shown as a matter of law. The jury would, we think, from the undisputed evidence of the custom of permitting mortgagors of cattle to make sales and pay over the proceeds in discharge of the mortgage debts and the admitted course of dealing covering about three years between Stephens and the Dublin National in conformity with that custom and practice, have been warranted in finding that the mortgagee impliedly consented that Stephens sell the cattle. But we are not prepared to hold that such consent was established, as a matter of law, contrary to the finding of the jury.

On the other hand, as to the sale of the cattle to the Oats, we have concluded that the undisputed evidence showed express consent of the mortgagee to the sale of the cattle. Mr. E. W. Harris, president of the mortgagee bank, testified, in effect, that, about the first of September, 1930 (i. e., about four days before the sale in question was made), he had a conversation over the telephone with Mr. James, of a Hamilton bank, in which he told Mr. James to tell Mr. Stephens to go ahead and sell those cattle and bring the check in; that James did not tell him whom he proposed to sell the cattle to, and he did not ask him; that the proposed sale price was such as to yield about $2,000, a satisfactory price, and the price the cattle were sold for. While, it is true, Mr. James was making the inquiry in behalf of two other prospective purchasers, the evidence conclusively shows that the consent to sell was not

limited to any particular persons, and therefore, we think, consent to the sale of the cattle for the price for which they were sold is clearly shown. This being true, the Oats acquired good title to the cattle and the fact that they paid the purchase price to the Farmers' National is of no controlling importance. Under such circumstances, neither the Oats nor the Farmers' National could be held liable for a conversion of the cattle.

 The appellee Dublin National contends that there was no pleading of a waiver of its lien by appellant Farmers' National. To this we are unable to agree, since said appellant expressly adopted as a part of its pleading its answer to the cross-action of the Oats, which clearly alleged the facts to constitute a waiver. But since every part of the judgment under attack in this appeal is one for a conversion of the mortgaged property, we are of opinion that no pleading of a waiver was necessary. A conversion is a tort. It was necessary for plaintiff to prove that the sale of the cattle to the Oats was without its consent. Ewing & Phillips Hdw. Co. v. Cage-Sparks Hdw. Co. (Tex. Civ. App.) 297 S. W. 568. As said in 11 C. J. p. 624: "Where the mortgagee sues a purchaser from the mortgagor for a wrongful conversion of the mortgaged property, the burden is on plaintiff to show that the purchase was without his consent." Since, if the cattle were sold with the consent of the mortgagee, there would be no conversion, the defendant charged as a conversioner had the right under its general denial to introduce any evidence to show that there had been no conversion, for such would be clearly rebuttal testimony. By such testimony the defendant could show that it was not a wrongdoer, and without proof that it was a wrongdoer there could be no recovery.

██ Because of the conclusions stated it will be necessary to reverse the judgment of the court below, in so far as it awarded recovery in favor of plaintiff against the Farmers' National for a conversion of some of the cattle sold to Oats and render judgment for the latter. It also becomes necessary to reverse the judgment in favor of the Oats against the Farmers' National upon the cross-action for $2,000 and render judgment for Farmers' National. Unfortunately, we are without power to correct the judgment in so far as it awarded recovery against the Oats for a part of the cattle taken under sequestration and awarded damages for conversion of 13 head of cattle; they not having appealed. Smith v. First State Bank (Tex. Civ. App.) 255 S. W. 511; Fife v. Ins. Co. (Tex. Civ. App.) 283 S. W. 645; Traders' National Bank v. Clare, 76 Tex. 47, 13 S. W. 183. That part of the judgment must remain undisturbed.

██ We are unable to sustain the assignment that there was no evidence to justify submission of the issue of whether the Farmers' National, by its cashier, participated in the sale of the 56 calves. A general statement of the law applicable to the question is found in 38 Cyc. 2054, as follows: "Every person is liable in trover who personally or by agent commits an act of conversion, or who participates *by instigating, aiding or assisting another* (italics ours) or who benefits by its proceeds in whole or in part." The authorities cited in support of the clause, "or who benefits by its proceeds in whole or in part," do not seem to us to support it. We do not believe that a case of conversion can be made out by proof only of the receipt and appropriation of the proceeds of the converted property. In fact, the same authority (38 Cyc. 2019) in effect so states, as follows: "A receipt of the proceeds or a part thereof, of goods which have been wrongfully converted by a third person, is not a conversion unless defendant participated in the wrongful act or took such proceeds in accordance with a prior agreement, which related to the act of conversion, as well as to the sharing in the proceeds." We cannot agree with the trial court that Farmers' National had no mortgage on the cattle. The undisputed record evidence shows that it did have mortgages on all the cattle owned by Stephens in Hamilton county. All the evidence showed that the cattle were in Hamilton county. The good faith therefore of the Farmers' National must be treated as conclusively shown.

But, regardless of the consent or want of consent to the sale of the cattle by the senior mortgagee, Dublin National, Stephens could not have made a lawful sale without the consent of the Farmers' National. R. S. 1925, art. 5496. In recognition of this fact he got such consent prior to the sale. Without such consent no title could have passed by the sale free of the lien of the Farmers' National. But with such consent good title did pass, so far as the last-named bank was concerned. Coupled with the consent was the implied agreement that the proceeds would be used, at least in part, to reduce Stephens' indebtedness secured by the mortgage. Under the circumstances shown by the evidence this was so clearly implied that it would perhaps have required an express agreement to the contrary to have repelled the inference. The Farmers' National had constructive notice of the senior mortgage. We therefore think the conclusion is inescapable that, charged with such knowledge, by giving its consent to the sale, with the implied understanding that the proceeds should be applied, either wholly or in part, to the debt of Stephens to said bank, and in pursuance of that consent and understanding, the actual receipt and appropriation of a part of the proceeds in that way necessarily resulting in a deprivation of the Dublin National of the benefit of its security, constituted such a participation on the part

of the Farmers' National as amounted to a conversion within the principles of law above quoted.

In regard to the judgment in favor of the commission company against the Farmers' National for the amount of the proceeds of the sale of 56 calves, the check for which was sent to the Farmers' National, we have concluded that the law and the evidence does not support the right of such recovery. Both parties were equally chargeable with constructive notice of plaintiff's lien. Each was without actual knowledge of such lien. Contrary to the finding of the jury, we hold, as said before, the undisputed evidence shows that the Farmers' National had a mortgage on the cattle. There is, therefore, no question of the good faith of the Farmers' National in crediting the proceeds of the check to the mortgagor, R. H. Stephens, and receiving a portion of its proceeds in discharge of the indebtedness of R. H. Stephens to the bank. An action for money had and received does not lie for the all-sufficient reason, among others, that the money did not belong to the commission company. The money belonged to the plaintiff or R. H. Stephens. The Farmers' National having received such proceeds under a good-faith claim of right, there could be no implication of an agreement to return it to the commission company (27 Cyc. 859; Id., p. 863; .Pumphrey v. Hunter [Tex. Civ. App.] 270 S. W. 237, 240), and certainly could not maintain that action when it had no right to the fund.

We are therefore of opinion, in addition to the disposition of the case already indicated, that the judgment of the plaintiff against the commission company, the Farmers' National, and R. H. Stephens for conversion of 56 calves must be affirmed, and that the judgment for recovery over by the commission company against the Farmers' National must be reversed and rendered for the latter, all of which is accordingly so ordered.

### On Rehearing.

Nothing new is presented in the motion for rehearing of the Dublin National, and same will not be discussed.

In response to the motion of appellees the Oats for a rehearing, we have sought diligently to find some recognized principle of law to enable us to grant them relief against a part of the judgment in which they and their coappellee, Dublin National, are alone interested, and from which neither of said parties has appealed nor counterassigned errors. The part of the judgment referred to is that which awarded the Dublin National a foreclosure of its mortgage upon the cattle which had been taken into its possession and from the possession of the Oats, under a writ of sequestration. It will be recalled that the Oats asserted a cross-action against the Dublin National for the possession of the said cattle, and in the alternative a cross-action against the Farmers' National for recovery of the purchase price of 76 head of cattle, of which the 63 head involved in the foreclosure were a part.

The Oats, apparently content to abide the judgment of the Dublin National against them for the foreclosure, inasmuch as they had judgment upon their alternative cause of action against the Farmers' National, did not appeal, and, of course, have not cross-assigned any errors. The ground upon which we have reversed that part of the judgment rendered in favor of the Oats upon their alternative cross-action against the Farmers' National would at the same time require a reversal of that part of the judgment awarding a foreclosure of the mortgage, if we have the jurisdiction to do so. The question is: Can we disturb the last-named part of the judgment in the absence of any appeal by either of the coappellees or cross-assignments of error? In so far as the question may involve a matter of discretion, we elect to exercise all the discretion, if any we have, in favor of granting the relief sought. This narrows the inquiry to one of our power or jurisdiction to do so.

Appellate courts do not have jurisdiction independently of the manner of invoking it to correct every error that may occur in the trial of a case. As well said by Judge Speer in Blackmon v. Trail (Tex. Com. App.) 12 S.W.(2d) 967, 968: "The jurisdiction of our appellate courts is statutory (or constitutional), and they can exercise no power that is not conferred upon them by law. There is no statute giving to any of our appellate courts a general revisory power over the trial courts. Their authority to reverse judgments is limited to errors duly assigned or apparent upon the face of the record, commonly called fundamental error." That Courts of Civil Appeals are limited in their jurisdiction to a consideration of errors assigned and fundamental errors seems to be well settled. Clonts v. Johnson, 116 Tex. 489, 294 S. W. 844; Waggoner Estate v. Sigler Oil Co. (Tex. Com. App.) 284 S. W. 921; Wright v. Maddox (Tex. Civ. App.) 286 S. W. 607; Roberson v. Hughes (Tex. Com. App.) 231 S. W. 734.

It is just as well settled that an appellee may *as against an appellant*, by cross-assignments of error, obtain all the relief from errors prejudicial to himself that he could have by an appeal. (Italics ours.) 3 Tex. Jur. 1025. But, as said by the same authority, he cannot have errors so corrected "with respect to a co-appellee without taking and perfecting an appeal or suing out a writ of error." 3 Tex. Jur. p. 1025, § 727; Blackwell v. F. & M. Nat. Bank, 97 Tex. 445, 79 S. W. 518; Anderson v. Silliman, 92 Tex. 560, 50 S. W. 576; Woeltz v. Woeltz, 93 Tex. 549, 57 S. W. 35; Lauchheimer & Sons v. Coop, 99 Tex. 386, 89 S. W. 1061, 90 S. W. 1098; Kerens Nat. Bank v. Stockton, 120 Tex. 546, 40 S.W.

(2d) 7, 77 A. L. R. 362; Sullivan v. Doyle, 108 Tex. 368, 194 S. W. 136; National Bank v. Carper, 28 Tex. Civ. App. 334, 67 S. W. 188; Pumphrey v. Hunter (Tex. Civ. App.) 270 S. W. 237; Marshall, etc., Co. v. Stephenson (Tex. Civ. App.) 13 S.W.(2d) 711; Maryland Casualty Co. v. Willig (Tex. Civ. App.) 10 S.W.(2d) 415; Smith v. First State Bank (Tex. Civ. App.) 255 S. W. 511; Stewart v. Tolar & Daniel (Tex. Civ. App.) 250 S. W. 274; St. Louis Union Trust Co. v. Mo. Pac. Ry. Co. (Tex. Civ. App.) 146 S. W. 346; Yarbrough v. Whitman, 50 Tex. Civ. App. 391, 110 S. W. 471; Houston Ice, etc., Co. v. Nicolini (Tex. Civ. App.) 96 S. W. 84; Jamison v. New York & Tex. Land Co. (Tex. Civ. App.) 77 S. W. 969; Southwestern Teleg. & Tel. Co. v. Priest, 31 Tex. Civ. App. 345, 72 S. W. 241; Western Nat. Bank v. White, 62 Tex. Civ. App. 374, 131 S. W. 828; Sullivan v. Michael, 39 Tex. Civ. App. 564, 87 S. W. 1061; Clawson v. Williams, 27 Tex. Civ. App. 130, 66 S. W. 702.

The error from which relief is now sought is not a fundamental error, but if it were, that fact would be immaterial since, if in the absence of an appeal by the Oats a cross-assignment of error would not give the requisite jurisdiction, neither would the fact that the error was fundamental. Traders Nat. Bank v. Price (Tex. Com. App.) 228 S. W. 160.

In the light of the foregoing rules let us consider now those decisions wherein judgments have been reversed as to nonappealing parties, in order to discover, if possible, the true principle involved. It may be regarded as being as well settled as any of the propositions above stated, that where a judgment appealed from is based upon a single cause of action, or causes of action against all the parties on one side alike, the judgment affecting all alike, the appeal by one party and reversal of the judgment as to him requires a reversal as to all. Burleson v. Henderson, 4 Tex. 49; Brown v. Hancock, 13 Tex. 22; Willie v. Thomas, 22 Tex. 176; Dickson v. Burke, 28 Tex. 118; McIlhenny v. Lee, 43 Tex. 210; McRea v. McWilliams, 58 Tex. 334; Bradford v. Taylor, 64 Tex. 171; Hamilton v. Prescott, 73 Tex. 566, 11 S. W. 548, 549. There can be no valid argument that the action of the court, in reversing as to parties not appealing in such cases, is dependent for jurisdiction upon any exception to the jurisdictional limitation that the court can only act in response to assignments of error or a finding of fundamental error. But clearly the case at bar is not such a case. The judgment from which the Farmers' National appealed was one upon the cross-action of the Oats—a different cause of action from that under consideration. The judgments as to the two did not affect all parties alike. See Weems & Waldo v. Watson, 91 Tex. 35, 40 S. W. 722, wherein it was held that the cause of action of the warrantee of title to land against the warrantor for breach of the warranty involved in the same suit by a claimant of the land against the warrantee is a separate cause of action from that asserted by the plaintiff, so that, although the Court of Civil Appeals fails to acquire jurisdiction of the case to review the judgment as between the warrantee and the plaintiff, it did have jurisdiction to reverse the judgment as between the warrantor and the warrantee.

In Thompson v. Kelley, 100 Tex. 536, 101 S. W. 1074, 1075, the court, in holding that the appellate court could reverse the case as to parties not appealing, said that the Court of Civil Appeals had jurisdiction to render "any judgment which may be proper to any relief against that judgment to which *the appellants* may show themselves to be entitled." (Italics ours.) Then, by way of showing how that rule was applicable to the case in hand, the court further said: "Hence their appeal (i. e. the appeal of certain parties) may involve as incidental to the relief to which *they are entitled* a readjustment of other lines than the western boundary," etc. In Drake v. Yawn (Tex. Civ. App.) 248 S. W. 726, 731, it was contended that two parties to the judgment below, in attempting to perfect appeal, had failed to give notice of appeal. The court, in expressing its conclusion to the contrary, further said: "But if said defendants had not given such notice, and had in no manner attempted to appeal from said judgment, still the judgment against them could not be affirmed, for there was but one question, one issue in litigation, and that was the validity of the so-called consolidated county line school district. It was the only question in which any of the parties litigant was interested, and its determination affected all of one side or the other alike. The interest of the parties defendant was not severable, and hence the judgment was an entire and inseparable judgment, and if any one of the parties defendant appealed and obtained judgment favorable to the one appealing, it operated as a reversal as to all of the defendants." In Reeves & Lester v. McCracken, 103 Tex. 416, 128 S. W. 895, 897, a judgment awarding rescission of a transaction involving in part the conveyance of land was reversed. Two of the defendants alone appealed. Two others, who alone were guilty of the fraud upon which the rescission was sought, did not appeal. After having declared the necessity of reversing the judgment as to the appellants, the court said: "This leaves the question as to the disposition to be made concerning the other defendants, Edwards and Raysor. The result of our judgment in favor of Reeves and Lester is that plaintiff must keep and pay for the land, and that her cause of action against the others is for damages caused by the fraud perpetrated by them. In estimating such damages the land which plaintiff has obtained would have to be taken

into account; her damages being her loss after deducting its value. It is obvious therefore that in changing the judgment upon the complaint of Reeves and Lester, injury would be done to the others if it were left standing against them. While they have not applied for a writ of error, the application of Reeves and Lester brings before the court all parties so far as is essential to the rendition of the judgment *the plaintiffs in error are entitled to,* and the power to give relief to *them* by changing the judgment carries with it the power and the necessity to make such other changes therein as justice to the other parties demands. Thompson v. Kelley, 100 Tex. 539, 101 S. W. 1074." (Italics ours.) In Hamilton v. Prescott, 73 Tex. 565, 11 S. W. 548, 549, the Supreme Court had reviewed apparently conflicting decisions and declared: "We think the conclusion to be deduced from these apparently conflicting cases is that this court when it finds error in the proceedings of the lower court as to any party to the judgment, and not as to another, and that a proper discussion of the case as to one is not dependent upon the judgment as to the other, will reverse in part and affirm in part; but, where the rights of one party are dependent in any manner upon those of another, it will treat the judgment as an entirety, and, where a reversal is required as to one, it will reverse the judgment as a whole."

Do the decisions, of which those commented upon above are conspicuous examples, declare an exception to the rule that an appellate court has no jurisdiction to disturb the judgment of a trial court except when such jurisdiction is invoked by assignments of error or the existence of fundamental error? Unless they do it necessarily follows that we are without power to reverse the judgment in the instant case in so far as it decrees a foreclosure of the mortgage upon the cattle in the possession of the appellee Dublin National.

Just what support, if any, do these decisions lend to the proposition that, although the judgment of foreclosure affected no parties to the suit, except the Oats and their coappellee, Dublin National, and although neither of said parties appealed and for that reason were not entitled to have considered any cross-assignments of error or fundamental error affecting that part of the judgment, yet, because in passing upon an assignment of error of appellant Farmers' National, arising upon a cause of action in which appellee Dublin National has no interest, we determined a question which would have called for a reversal of the judgment of foreclosure, had the Oats appealed and assigned error, we may grant the latter all the relief that they could have had by such appeal and assignment of error. We cannot escape the conclusion that the decisions are not properly susceptible to any construction that would sup-

port that proposition. They go no further, we think, than to hold that when, in pursuance of appeal or writ of error proceedings, assignments of error are sustained or fundamental errors are noticed, and it appears necessary, in order to give the full measure of relief to which appellants or plaintiffs in error are entitled, to reverse judgments as to other parties, this will be done whether such other parties have appealed or not or assigned errors or not. The jurisdiction thus exercised is not an exception to, but clearly comes within, the limitation hereinbefore discussed, in that it is exercised under the warrant of the assignments of error of the appellant or plaintiff in error.

It must be admitted that some of the language in Reeves & Lester v. McCracken, supra, standing alone suggests the idea that the action of the court in disturbing a judgment as to nonappealing parties is for the benefit of, or to prevent injustice or hardship to, such nonappealing parties. But we do not believe the decision, when considered as a whole and with particular reference to the facts of that case, can properly be construed to so hold. It is not believed that the court intended to express solicitude because of hardship resulting from its decision, to the two defendants who alone were found guilty of fraud. It does not seem reasonable that the court should have been so concerned about preventing a hardship to the perpetrators of the fraud as to declare an exception for their sole benefit to a general rule and grant them relief in the absence of any appeal and of any assignments of error. On the contrary, we think the principle that ruled that decision was the same as in many of the other cases. The appellants by their assignments of error showed a right to have the judgment of the court below decreeing a rescission abrogated, not in part but in toto. To have undertaken to abrogate it as to the appellants only, and to leave it in effect as to the perpetrators of the fraud, would have been to stop short of the full extent of the relief to which appellants were entitled. Such action at the same time would have worked an unnecessary hardship on the innocent plaintiff because her cause of action for damages for the fraud could probably be defended against by the still effective (as to defendants) judgment of rescission. But, at any rate, the judgment reversed was based upon a single cause of action, affecting all the defendants alike, and came clearly within the rule recognized ever since Burleson v. Henderson, 4 Tex. 49, supra. We therefore find it necessary to overrule the motion of appellees, the Oats.

The commission company in its motion for rehearing insists that in detailing the facts from which we held that a jury would be authorized to find a waiver of the lien as to the 56 calves, we omitted others which we are requested to find as follows: "That the presi-

dent of the Dublin National Bank, the man who took the mortgage and handled the transaction, expected Stephens to sell the cattle, that the mortgagee bank expected to get its money from the sale of the cattle, and that if the cattle brought a fair market price, it would have been agreeable with the mortgagee bank for Stephens to sell them and the bank would have given its consent if the proceeds had been sent to it." Believing that the evidence justifies it, we find the additional facts as requested except, instead of finding that "it would have been agreeable with the mortgagee bank for Stephens to sell them and the bank would have given its consent if the proceeds had been sent to it," we find, in lieu thereof, that said bank would have accepted the proceeds of such sale without protest. We do not agree that the additional facts would have the effect of converting the question of waiver from one of fact to a question of law. To so hold would be tantamount to holding that to expect a thing to happen would show consent to its happening. One may, from known facts and circumstances, expect another to steal his purse, but that does not imply his consent to its taking.

 Further complaint is that we did not discuss assignments complaining of the refusal of the court to give requested special issues Nos. 3 and 4, as follows:

"Requested Special Issue No. 3: Prior to the sale of the 56 head of calves on January 8, 1930, had Ed Harris, president of Dublin National Bank, impliedly consented for R. H. Stephens to sell same and for the proceeds to be sent to the Dublin National Bank?"

"Requested Special Issue No. 4: Was the sale of the 56 calves on January 8, 1930, made with the consent, either express or implied, of Ed Harris, President of the Dublin National Bank, provided the proceeds be sent to the Dublin National Bank?"

Special Issue No. 8 given by the court was as follows: "Do you find from a preponderance of the evidence in this case, that E. W. Harris, President of the Dublin National Bank, consented for R. H. Stephens to sell the 56 head of calves which were shipped to Fort Worth and sold through the Breedlove Commission Company? Answer yes or no, just as you find."

At the request of the commission company, the court defined consent, express and implied, as follows: "In connection with special issue number eight, you are instructed that consent may be either express or implied. Express consent is defined as consent directly given, either in voice or in writing. Implied consent is consent manifested by signs, actions, or facts, or by inaction or silence, which raises a presumption that the consent has been given."

We think the special issue given with the definitions was a sufficient and fair submission of the real issue.

 While it is in effect conceded that we properly reversed the judgment of the commission company against the Farmers' National in so far as it was based on a cause of action for money had and received, it is insisted that the evidence warranted that judgment upon the theory that Stephens, in selling the calves, acted as the agent of the Farmers' National. It is insisted, we take it, that the uncontroverted evidence showed, as a matter of law, that Stephens was such agent, since an issue of such agency was submitted to the jury and answered in the negative. Does simple consent of a mortgagee of personal property for the mortgagor to sell the property necessarily and as a matter of law constitute the mortgagor the agent of the mortgagee in making such sale? We do not think so. And if there was any evidence to show that Stephens acted as the agent of the Farmers' National in selling the cows, then that issue, we think, was foreclosed by the verdict of the jury.

It is therefore our opinion that all motions for rehearing should be overruled, and it is accordingly so ordered.

HICKMAN, C. J.

I am unable to agree with my associates in that portion of their opinion disposing of the motion for rehearing by appellees Oats' and Oats, denominated in the opinion as the Oats. It is my view that the judgment in favor of the Dublin National Bank against them should be reversed and that portion of the case be remanded for a new trial. It is my view that no jurisdictional question is involved, but that we have the power, and it is our duty, to reverse the judgment as between these parties. The injustice of not doing so is fully recognized by my associates, and the only difference in opinion between me and them relates to our power. This exact question, to my mind, has been authoritatively determined many times, and I content myself by making quotation from the authorities which I deem to be controlling. In the case of Mosler Safe Co. v. Atascosa County (Tex. Civ. App.) 184 S. W. 324, 325, an action was brought against the county for the price of some safe doors. It denied liability but made a contractor and its surety parties to the suit, praying that it have judgment against them in the event plaintiff recovered any judgment against it. The plaintiff was unsuccessful in the trial court and, therefore, the county took nothing against the contractor and its surety. Upon appeal the judgment denying the plaintiff any recovery was reversed and judgment was rendered in favor of the plaintiff against the county. Only the plaintiff appealed, and the court had before it a determination of whether it should disturb the judgment below as between the two coappellees, and disposed

of that question in this language: "This being the case, we conclude that it would be unjust to let the judgment in favor of said two parties stand. The power to give relief to appellant by changing the judgment carries with it the power and the necessity to make such other changes therein as justice to the other parties demands."

In the case of Hamilton v. Prescott, 73 Tex. 565, 11 S. W. 548, 549, Justice Gaines reviews the authorities on this question and announces the rule that: " * * * where the rights of one party are dependent in any manner upon those of another, it will treat the judgment as an entirety, and, where a reversal is required as to one, it will reverse the judgment as a whole."

In Thompson v. Kelley, 100 Tex. 536, 101 S. W. 1074, 1076, the question involved here was certified to the Supreme Court, and that court, speaking through Justice Williams, in answering that the Court of Civil Appeals had the power to grant relief to a nonappealing party where its judgment affected that party adversely, used this language: "As the verdict of the jury and the judgment based upon it fixed all of the boundaries, action of the appellate court which may result in disturbing those boundaries, in part, may affect the rights of parties depending on other lines than the one in which Thompson and Forgy are more immediately concerned. Hence their appeal may involve, as incidental to the relief to which they are entitled, a readjustment of other lines than the western boundary, and in determining that appeal the court has the power, all of the parties being before it, to determine also the effect of the decision upon the rights of those who did not appeal, and to render such judgment as will fully protect all concerned."

This court had the same question for consideration in the case of Mergenthaler Linotype Co. v. McClure, 9 S.W.(2d) 198, 202,

which judgment was affirmed by the Supreme Court in 16 S.W.(2d) 280. In that case there were many parties but only one appealed. On account of our judgment's reversing the case on appellant's assignments, the judgment of the court below was so disturbed that the rights between parties not appealing were affected. We, therefore, reversed the judgment in its entirety. I think that the reasons which we assigned in that opinion for our action are sound and are supported by the above authorities. Our language in disposing of the question was as follows: "In view of the conclusions announced, the usual procedure would be to reverse and remand the case for a new trial as to appellant, but leaving all those portions of the judgment of the trial court disposing of issues as between parties other than appellant undisturbed. We think, however, this procedure in this case would probably work injustice. The judgment determines no question of priority as between appellant and R. M. Smith. Appellant seems to have consented for R. M. Smith's case to be consolidated. E. G. Negy may have some rights that require further adjustment, as between him and other parties, arising solely from the disposition we are making of the case. The rights of the parties are more or less interdependent. Hamilton v. Prescott, 73 Tex. 565, 11 S. W. 548."

In this language. I think we went to the heart of the question. If the rights of the nonappealing parties as between themselves arise solely from the disposition which we make of the case, I can see no impediment to our authority to protect those rights. Any other rule would require a party who was himself satisfied with the judgment of the trial court to appeal therefrom solely for the purpose of safeguarding his rights against a coappellee, in the event the appellate court should reverse the judgment as to the appellant. I do not believe the authorities above cited make that requirement.